James Cowgill, Plaintiff in Error, v. James A. Linville, Defendant in Error.

Kansas City Court of Appeals, January 4, 1886.

1. Administration—Power of Administrator Over Property of Estate—Transfers of it.—An administrator, as such, has no power to assign or transfer notes belonging to the estate, of which he is the trustee and not the owner, except "to creditors, legatees and distributees, in discharge of an amount of their claims equal to the amount of such * * * note," or notes. Sect. 212, Rev. Stat. And a surrender of a note belonging to the estate, in consideration of a transfer to the administrator of the goods of the estate, for which it was given, is illegal. It is practically the payment of an individual debt by the administrator, with the property of the estate. By such an illegal agreement the notes are not paid, and the title to them remained in the estate, and the succeeding administrator might recover upon them notwithstanding such agreement and surrender.

2. Subrogation—Doctrine of in Missouri.—From the cases, it would appear that, in this state, the general rule is, that a surety, by paying the debt of his principal becomes entitled to be subrogated to all the rights of the creditor, so as to have the benefit of all the securities which the creditor had for the payment of the debt, without any exception; as well those which became extinct (at law, at least), by the act of the surety's paying the debt, as all collateral securities, which the creditor held for the payment, which have not been considered as directly extinguished by the surety's paying the debt. So that a security of the defaulting

administrator, being forced by the succeeding administrator to pay the amount of notes belonging to the estate which were illegally transferred, is entitled to be subrogated to the rights of such succeeding administrator (*de bonis non*), to an amount equal to· what he paid upon the said judgment, with interest. And in a suit, for such purpose, it devolves upon the defendant to show that the assets of the estate, so illegally transferred, have been· accounted for to the estate, if such is the fact.

ERROR to Caldwell Circuit Court, HON. JAMES M. DAVIS, Judge.

*Reversed and remanded.*

Statement of case by the court.

This is a suit in equity. The petition, omitting the· caption, is as follows :

"Plaintiff says that about the fourteenth day of November, 1877, one E. D. McCray died at· Kingston, Caldwell county. That one Thomas J. Owen was appointed administrator of the estate of said E. D. McCray by the probate court of Caldwell county. That thereupon said Owen as principal entered into bond to the estate in the sum of twenty-five hundred dollars, conditioned that he would account for and pay· over all moneys .of the estate when thereto required by the order or decree of any court having jurisdiction, and that he would faithfully perform his duties as administrator of said estate. That defendant, who was brother-in-law to said Owen, signed said bond as surety and solicited plaintiff also to sign the same, promising plaintiff that he would indemnify plaintiff against all losses on account of becoming said Owen's surety. That plaintiff was induced by said solicitations and promises of defendant to sign said bond as surety. That the bond so signed was presented to and approved by said probate court, and said Owen entered upon his duties as administrator of said estate. That said E. D. McCray at the time of his death was owner of a stock of goods in Kingston, consisting of drugs, medicines, oils, paints, liquors and the like, which said stock of drugs con-

stituted all the assets of said E. D. McCray, save and except certain household goods and wearing apparel which the widow of said McCray took at the appraised value as a portion of her absolute property and dower. That defendant and said Owen combined to defraud the estate out of said stock of goods and consummated an agreement by which defendant was to have said stock of goods far below its real value and was to pay said Owen therefor by satisfying certain claims and demands that he had against said Owen. That afterward said arrangement between defendant and Owen was modified by taking one Warren McCray as partner with defendant, and said Owen was also to be co-partner in the concern. That pursuant to said modified agreement said Owen as administrator of said McCray, sold said stock of goods to the firm of Linville & McCray for the sum of nine hundred and sixty-five dollars, to be paid in installments and for the payment of said installments said firm gave to said Owen their notes payable in a few months thereafter. That plaintiff has no information that would enable him to say whether said McCray knew of the fraudulent combination between Owen and Linville to sell said goods at less than a fair value, or whether he knew that Owen as a concealed partner was to participate in the profits of the new firm. That said sale was at private sale, leave to sell the same having been procured from the probate court by said Owen. That said Owen was a secret partner with defendant in the purchase of said goods. That afterwards defendant and Owen removed said stock of goods to Black Oak, and sold the same to one Stone, who paid the purchase price to defendant therefor. That said Owen, at some time during the continuance of the co-partnership (the exact time being unknown to the plaintiff), surrendered to Linville the notes given for the purchase money of said stock of goods, pursuant to the arrangement before mentioned. That said notes had not then been paid, nor has the money due thereon been since paid. That said Owen was removed as administrator of said estate and

the estate put in the hands of John W. Brown, public administrator of Caldwell county, Missouri, by order of said probate court. That thereupon said Brown demanded the assets of said estate from said Owen, but said Owen failed and refused to pay or deliver over said assets or any part thereof to said Brown, as ordered and directed to do by said probate court. That Brown instituted suit against plaintiff in this court upon the bond above mentioned and that such further proceedings were had in said cause, that at the June term, 1880, the state of Missouri, at the relation of said Brown, as administrator of said estate, recovered judgment against plaintiff for the sum of one thousand dollars, on which judgment an execution was issued and levied on plaintiff's property. That to avoid the sale of his property plaintiff was compelled to pay said Brown three hundred and ninety-nine dollars. That defendant still owes the amount of the notes before mentioned, being nine hundred and sixty-five dollars, and interest on the same since about December 1, 1877, and said Owen was and is insolvent. That the contract between defendant and Owen, that defendant was to cancel claims against Owen in consideration of the sale by Owen of said stock of goods to the defendant, and the subsequent surrender of said notes to Linville, without the same having been paid to Owen in money, was a fraud on the rights of plaintiff, as surety on said bond. That by reason of the premises plaintiff has been subrogated to the rights of the said estate against defendant, and that in equity and good conscience defendant is indebted to plaintiff in said sum of three hundred and ninety-nine dollars, and interest since November 18, 1880, on which day the plaintiff paid the same to Brown as aforesaid. Wherefore plaintiff prays the court to adjudge and decree that the surrender of said notes to defendant was a fraud against plaintiff, and that defendant pay plaintiff three hundred and ninety-nine dollars, and interest since November 18, 1880, and for such further orders and relief as plaintiff may show himself to be equitably entitled to."

The answer was a general denial.

The plaintiff, to maintain the issues on his part, called the defendant, who testified: "I did not solicit plaintiff to go on Owen's bond as surety. Never spoke to him about it. Warren McCray and I bought of T. J. Owen, as administrator of E. D. McCray, the stock of drugs owned by McCray's estate at about seven hundred and sixty-five dollars. I did not pay any money at the time of the sale. The only money paid then was some funds of J. C. McCray's, which Warren McCray put in. We gave Owen as administrator, our notes for the balance of the purchase, amounting to six hundred dollars, payable in three, six and nine months with interest. There was no understanding at the time we purchased the stock of goods that Owen should come in as a partner, but in a few days, about a week afterward, I sold to Owen a one-fourth interest in the goods. No money passed between us at the time of this sale, but Owen agreed to assume and pay one-fourth of the firm debts. The firm consisted of McCray, Owen and myself for about nine or ten months. When I bought McCray out I did not pay him any money, but agreed to assume and pay McCray's share of the firm debts. When I bought McCray out I sold to Owen another one-fourth in the stock of goods, making his share in the stock a half interest. Owen paid me no money, but agreed to pay one-half of all debts, including the notes given by McCray and myself for the purchase price of the stock. About two months afterward (the goods in the meantime having been moved to Black Oak), I sold all my interest in the stock of goods, Owen agreeing to pay all my store indebtedness and pay me nine hundred and forty-five dollars, which I had advanced on the store account. No money was paid me at that time, but afterwards Owen sold the stock to Stone and paid me the proceeds, amounting to about nine hundred and twenty dollars. I have not been able to get the balance of the nine hundred and forty-five dollars, which he agreed to pay me, out of him on account of his insolvency. During all these transactions Owen was administrator of McCray's estate. I

never paid Owen any money on account of the notes given to him as administrator, the only money paid for the goods being the money of Jim McCray, paid by Warren at the time of our purchase; but Owen assumed and agreed to pay such notes in consideration of the transfer of the stock to him as I have detailed."

It was then agreed that plaintiff and defendant were sureties on the bond of Owen as administrator of McCray's estate; that the administrator *de bonis non* brought suit against them as such sureties, recovered judgment against them, took out execution against them, and that plaintiff and defendant paid off such judgment, each paying an equal amount, the plaintiff paying the amount specified in the petition at the time therein named; and that said suit was for unaccounted assets, which had gone into Owen's hands.

This was all the evidence. The court gave judgment for the defendant. The plaintiff has brought the case here on a writ of error.

CROSBY JOHNSON, for the appellant.

I. An administrator is trustee for others, not owner of the estate. He has only such powers over the estate as are conferred by law. *Stephens v. Boonville,* 34 Mo. 325; *Stagg v. Linnenfesser,* 59 Mo. 336; *Chandler v. Stephenson,* 68 Mo. 450; *Stiles v. Smith,* 55 Mo. 363; *Ex. Bk. v. Tracy,* 77 Mo. 594.

II. Owen had no authority to sell the notes belonging to the estate; and his illegal disposition of the notes did not deprive the estate of its title; and he could not pay his individual indebtedness with them. Sects. 212, 241, Rev. Stat.; Cooley on Torts, 458; Freeman on Judgments, sect. 237; *Gamser v. Franks,* 75 Mo. 64; Perry on Trusts, sect. 427; *Forney v. Adams,* 74 Mo. 138; *Ins. Co. v. Ins. Co.,* 4 Mo. App. 578; *Merritt v. Merritt,* 62 Mo. 150.

III. The title to the notes vested in Brown, when he became administrator *de bonis non,* and he might have recovered on them notwithstanding their surrender

by the former administrator (Owen). And by paying to Brown the money due from Linville and McCray (which Owen had bound himself not to collect), plaintiff became subrogated to all Brown's rights and remedies as administrator *de bonis non.* *Farrold v. Bk.*, 44 Mo. 336; *Allison v. Sutherlin,* 50 Mo. 274; *Evans v. Snyder,* 64 Mo. 576; *Warnecke v. Wood,* 58 Mo. 352.

IV. Subrogation is not the result of contract, nor does it depend on privity of parties. Sheldon on Subrog., sect. 1, 11; *Smith v. Schneider,* 23 Mo. 447; *Sweet v. Jeffries,* 48 Mo. 279; *Bunting v. Ricks,* 32 Am. Dec. 699; *McClurg v. Beirne,* 34 *Id.* 739; Brandt on Suret., sect. 260.

V. The contract between Owen and Linville was illegal, because it put Owen under temptation and wrong influence. His assumption of Linville's indebtedness could not work L.'s discharge, unless accompanied by payment. *Smith v. Gregory,* 75 Mo. 122; *Atlee v. Fink,* 75 Mo. 100; *Fuller v. Dane,* 18 Pick. (Mass.) 472. The duty rested on Linville to pay for the goods bought, or to see that it was paid; he was the primary debtor. The surety of Owen, having paid it under compulsion, for him, or for Owen, can recover against Linville. *Orrick v. Durham,* 79 Mo. 174; Sheldon on Subrog., sects. 87, 89, 93, 167. Owen was not authorized to receive payment in anything but money. *Kirt v. Hiatt,* 2 Ind. 322; *Aultman v. Lee,* 43 Iowa, 404; *Buckwalter v. Craig,* 55 Mo. 71.

Davis, and Mansur & McLaughlin, for the respondent.

I. A party cannot state one cause of action or defence, and recover on a different one. He must stand or fall upon the case made by the pleadings. And the theory of the trial must be the same in this court as in the court below. *Well v. Pasten,* 77 Mo. 287; *Chapman v. Callahan,* 66 Mo. 299; *Donan v. Intelligencer,* 70 Mo. 168; *Bullene v. Smith,* 73 Mo. 150; *Ely v. R. R.,* 77 Mo. 287; *Walker v. Owen,* 79 Mo. 553; *Whetstone v. Shaw,* 70 Mo. 575.

II.   There is nothing to show that Owen, as administrator, failed to account for the debt due from Linville. And if not, the securities of the administrator are not entitled to any greater rights by subrogation or otherwise, than the estate had.

III.   If a debtor cannot discharge himself from liability on a debt to the estate by paying the debt to the administrator in property, the only one who could take advantage of such payment is the representative of the estate ; and such right is not transmitted to the securities of the (former) administrator.

IV.   The party for whose benefit the doctrine of subrogation is exercised can acquire no greater rights than those of the party for whom he is subrogated ; if the latter had no right of recovery, the former can acquire none. *Ins. Co. v. Ins. Co.*, 8 La. Ann. 1 ; *Simpson v. Thompson,* 3 App. Cas. 278 ; Sheldon on Subrog., sect. 6 ; *Smith v. Gregory*, 75 Mo. 122.

V.   If the securities of Owen are subrogated to any rights in this suit, it would be to the rights of Owen, their principal, as *an individual,* and Owen could not compel Linville to pay the debt a second time, and hence his securities cannot. Linville, by becoming security for Owen, did not thereby forfeit any of the rights or privileges that would be accorded to any other debtor of said estate.

HALL, J.—Owen as administrator of the estate of McCray was not the owner of the estate ; he held the personal effects and choses in action belonging to the estate as trustee for the creditors and next of kin. *Stephens, Adm'r, v. The Mayor of Boonville*, 34 Mo. 325.   His power to dispose of the notes executed by Linville and Warren McCray was limited and regulated by statute.   He had no power to assign or transfer any of said notes except "to creditors, legatees and distributees, in discharge of an amount of their claims equal to the amount of such * * * note," or notes.   Section 212,

Rev. Stat.; *Chandler v. Stephens*, 68 Mo. 452; *Stagg v. Linnenfelser*, 59 Mo. 342.

The testimony of the defendant does not directly state that Owen, after the consummation of the agreement between them, surrendered the notes to him. It is nothing but fair, however, to assume from the evidence that Owen did make such surrender of the notes. That surrender of the notes, and the release of defendant by Owen from all liability thereon, in consideration of the transfer of the stock of goods by defendant to him, was illegal. The agreement, as shown by the defendant's testimony, by which, of course, he is bound, was not an agreement by which the notes were paid to Owen, as administrator, by a transfer to him, as such administrator, of the stock of goods. That is, the agreement was not an agreement for the payment of the notes in goods instead of money. So that we need not consider that aspect of the case. The agreement was simply that of a sale of the defendant's interest in the goods to Owen in part consideration of a surrender of the notes and a release of defendant's liability thereon. In other words, by that agreement the administrator, Owen, paid his individual debt to defendant with the notes against defendant, which were the property of the estate. The agreement was illegal. *The State to Use of Wolf v. Berming*, 74 Mo. 95. By the illegal agreement, and unauthorized disposition of the notes by Owen, the notes were not paid. The title to the notes vested in Brown when he became administrator *de bonis non* (*State v. Fulton*, 35 Mo 323, and *State v. Dulle*, 45 Mo. 269), and he might have recovered on them notwithstanding the said agreement and surrender of the notes.

Brown as administrator *de bonis non* of the McCray estate obtained judgment against the plaintiff and defendant, who were joint sureties on Owen's bond as administrator of said estate, on account of Owen's failure to account for the assets of the estate. This suit was brought for the purpose of having the plaintiff subrogated to the right that Brown had to recover upon

the notes against defendant, as to the part of the judgment paid by him, the plaintiff, misled by the fact that the plaintiff and defendant were co-sureties on Owen's bond, the defendant has urged in his brief that this suit was brought by plaintiff to recover of defendant as co-surety the amount paid by plaintiff. It is true that the petition charges the defendant with certain acts and promises not necessary to plaintiff's right to the subrogation sought by him. To sustain these charges there was no evidence. There was no objection to the petition made by the defendant. The petition clearly sets forth a claim of the plaintiff's right to the subrogation. The evidence was confined exclusively to those facts upon which that claim was based. And we can see no reason in the claim made by the defendant that the petition alleges one cause of action and that the plaintiff seeks to recover on an entirely different cause of action. The fact that plaintiff and defendant were such co-sureties has a tendency to confuse, but that fact has no real bearing upon the question in this case, which is simply, whether upon the facts stated by the defendant in his evidence the plaintiff is entitled to be subrogated to the right that Brown had to recover against defendant upon the said notes, as to the amount paid by plaintiff upon said judgment.

Upon this question, the following statement of the doctrine of subrogation has been approved by our supreme court: "From the cases it would appear that we have adopted the general rule that a surety, by paying the debt of his principal, becomes entitled to be subrogated to all the rights of the creditor, so as to have the benefit of all the securities which the creditor had for the payment of the debt, without any exception—as well those which became extinct (at law, at least) by the act of the surety's paying the debt, as all collateral securities which the creditor held for the payments which have not been considered as directly extinguished by the surety's paying the debt. These decisions have been made upon a supposed principle of equity, which for

the purpose of doing justice to the surety who has paid
the debt, interposes to prevent the judgment or security
which has been so extinguished at law from being so
considered as between the surety and the principal or his
subsequent lien creditors." *Furnold v. The Bank, etc.*,
44 Mo. 339 ; *Allison v. Sutherlin et al.*, 50 Mo. 277.

The defendant is, therefore, in error in claiming that
the plaintiff can be subrogated only to the rights of
Owen, and that, because Owen could not have main-
tained a suit upon the notes against the defendant, the
plaintiff cannot maintain such a suit. Admitting, only
for the purpose of the argument, that Owen could not
have maintained such suit, that fact can have no bearing
upon the right of plaintiff to be subrogated to the
rights of Brown, administrator *de bonis non*. If Brown
had, as we hereinbefore said, as such administrator *de
bonis non*, the right to recover upon the notes against
the defendant, then the plaintiff is entitled to be subro-
gated to such right, to an amount equal to what he paid
upon the said judgment with interest. But the defend-
ant makes another objection to plaintiff's right to such
subrogation. The defendant argues, if Owen had in
fact accounted as administrator for the amount due on
the notes, if, in other words, Owen had paid to the estate
the amount so due, that Brown would have had no
right to recover again, for the benefit of the estate, the
amount thus paid and accounted for ; and that, inasmuch
as there is no evidence that Owen did not pay and
account for, to the estate, the amount so due on said
notes, it cannot be assumed that he did not do so. It is
true that neither the estate, nor any one in place of the
estate, would be entitled to payment twice of the notes.
In this case, however, it appears that Owen as admin-
istrator illegally and without authority surrendered and
delivered up, as paid, the notes to the defendant, that
the defendant never paid the same in any manner, and
that, thereafter, Owen having been removed as admin-
istrator and Brown having been appointed administrator
*de bonis non*, Brown recovered a judgment against plain-

tiff and his co-surety upon Owen's bond, on account of Owen's failure to account for the assets of the estate. In this case, upon these facts, we think that it devolved upon the defendant to show that the notes had been paid to the estate if such was the fact. The defendant had not paid the notes. If Owen had accounted for or had paid the notes to the estate, the defendant should have shown it.

We hold that Brown, as administrator *de bonis non,* could have recovered the amount due upon the notes from the defendant, and that, as to the amount paid by the plaintiff upon the judgment aforesaid, with interest from time of payment, the plaintiff is entitled to be subrogated to the rights of Brown as such administrator.

The judgment is reversed and the cause is remanded. All concur.