WALTER JOHNSON, Guardian, Respondent, v. THE PAYNE & WILLIAMS BANK, Appellant.

Kansas City Court of Appeals, January 29, 1894.

1. **Banks and Banking**: FIDUCIARY DEPOSITS NOT APPLICABLE TO DEBT. A bank cannot use a deposit to pay the individual debt of the depositor due to-wit, when it has knowledge that the deposit is held by the depositor in a fiduciary capacity and does not belong to him personally.

2. **Guardian and Curator**: RULES GOVERNING. The duties of a guardian with respect to the estate of his ward are in many respects analogous to those of an executor or administrator, and everybody dealing with him is bound to know his statutory duties and rules governing them.

3. ———: PAYMENT OF NOTE TO BANK OUT OF DEPOSIT: ALLOWANCE: AGREEMENT. A bank cannot pay a note due to it out of a guardian's deposit of his ward's money, and an allowance by the probate court to the guardian, nor the agreement of the guardian that the note may be paid out of such deposit after such allowance can justify such application of the deposit, especially when the guardian is indebted to the ward.

*Appeal from the Howard Circuit Court.*—HON. JOHN A. HOCKADAY, Judge.

AFFIRMED.

*Sam C. Major* for appellant.

Now we contend that under the pleading in this case the only question presented for the court to pass upon is whether or not, the new matter set up in the defendants' answer amounts to a complete defense to the suit; if it does, then the court erred in refusing defendant's instructions numbers 2 and 3, and in giving plaintiff's instructions numbers 1 and 2. We do not pretend to hold that a bank has the right, where depositor's account is in a fiduciary capacity, upon its own motion, to charge off an individual indebtedness to itself against said deposit, and such are not the facts in this case; our defense is grounded upon the agreement between Settle as guardian, and defendant, "that when the probate court at its August term, 1890, made to Settle an appropriation of the money of his wards—(see language of the Statutes, 1889, vol. 2, sec. 5305)—for their support and maintenance, defendant might, out of the money of these wards so appropriated to Settle, pay off said Settle indebtedness to the bank, which it did, by and with the consent of said Settle.

The right of Settle and defendant to make this agreement is not, and cannot be, legally questioned—and it cannot avail respondent to say that the guardian might abuse his trust, all such relations are susceptible to abuse—that they did make it is admitted; the power of the probate court to make the appropriation is expressly given by statute. 2 Revised Statutes, section 5305 provides: "The probate court shall order the proper education, support and maintenance of

minors, according to their means, and for such pur-
poses may, from time to time, make the necessary
appropriations of the money * * * of such
minor not otherwise provided to be used.

Now the only contention left plaintiff is, that at
the time the court made the appropriation to Settle, he
was, as guardian, indebted to his wards—outside the
money in bank—more than the amount of the appro-
priation, and that said appropriation was applied upon
and used in payment thereof. In answer to this, in
the first place we defy the gentleman to search the
record in this case and point out a single syllable of
evidence that at the time the appropriation was made
to Settle by the probate court, that said Settle was
indebted to his wards in any sum whatever, or that
said appropriation was applied in payment of any
indebtedness of Settle to his wards. It is true, this
allegation is made in reply of plaintiff to defendant's
answer, but this allegation in the reply is deemed con-
troverted by defendant (Revised Statutes, 1889, sec.
2073), and there is an entire absence of evidence to
support it, or upon which to base plaintiff's instruc-
tions numbers 1 and 2. That it is error to give
instructions based upon assumed facts not appearing
in evidence, and that instructions must be restricted
within the limits of the issue made by the pleadings, is
the well established law of this state. *State ex rel. v.
Sitlington*, 51 Mo. App. 252; *Wright v. Fenda & Hig-
gins*, 44 Mo. App. 634; *Norton v. Railroad*, 40 Mo.
App. 642; *Maddox v. Ins. Co.*, 39 Mo. App. 198;
*Conway v. Railroad*, 24 Mo. App. 235, 369, 494; *State
v. Riley*, 100 Mo. 494; *Dunn v. Street Railroad*, 98 Mo.
653, 368; *Bank v. Overall et al.*, 90 Mo. 410, 112, 389;
*Bank v. Murdock*, 62 Mo. 70. Conceding, however,
that at the time of said appropriation to Settle he was
indebted to his wards in excess of said appropriation

outside of, and in addition to, their money he had in bank, we fail to see how this contention can avail plaintiff, in the face of the admitted, completed agreement, as alleged, between Settle and defendant; in the first place, after having made the agreement, and the court appropriated the money, and the defendant having charged off Settle's debt out of said appropriation, he, Settle, had no right to apply said appropriation to any debt he might owe his wards. *Knecht, Adm'r v. U. S. S. Institution*, 2 Mo. App. 563. In the second place, it was immaterial, so far as defendant was concerned, whether at the time of said agreement Settle, as guardian, owed his wards one dollar, or a thousand, or nothing, for it is not contended that defendant had any knowledge of how Settle stood with his wards, the law gave him control of their funds and the law demanded of him a bond, conditioned, for his faithful management of these funds, and this bond is a full and complete protection to said wards against any mismanagement or shortage of Settle, their former guardian; and we call attention to the fact that Settle was not removed as guardian until November 17, 1890, months after the agreement between Settle and defendant had been made and fulfilled.

Let us illustrate: Suppose this appropriation for the support and maintenance of the wards had been made to A, would Settle, as guardian, have been authorized to direct the bank to pay it to A out of his wards' funds in the bank? and would the bank, under said direction of Settle, be justified in paying A out of the wards' funds on deposit? Unquestionably, yes. Again, after the appropriation to A, and after the bank, by direction of Settle, had paid the money over to A, could Settle afterwards hold the bank accountable for the money, because at the time the bank paid it over, A, unknown to the bank, was indebted to the wards in

an amount in excess of said appropriation to A?
Unquestionably, no. And so this matter rested until
six months afterwards, when it was found that Settle
was insolvent, and his bondsmen had a shortage to pay.

We would call the attention of the court to the
receipt taken by Settle from Johnson, his successor,
dated December 18, 1890, and to his final settlement
made February 26, 1891. In both of them he accounts
for the true balance of his wards' money that he had on
deposit in defendants' bank, it being the same amount
that defendant in its answer alleges on deposit, to-wit:
$638.50 as balance due Settle as guardian, and paid by
the bank to Johnson, his successor, on check of Settle
as guardian, which shows conclusively that Settle rec-
ognized the fact that his agreement with the bank had
been fulfilled, and that his giving to Johnson, his suc-
cessor, a check for the amount of $217.95, seven months
after it had been appropriated to him and charged off
by the bank at his direction, was an afterthought and
simply an unfair and outrageous attempt to protect his
bondsmen to this extent at the expense of the bank,
for the wards are fully and amply protected from all
loss by reason of any shortage of Settle by his guardian
bond.

*R. C. Clark* and *Draffen & Williams* for respondent.

(1) It is settled law, that a bank cannot use a
deposit to pay the individual debt of the depositor due
to it, when the bank has knowledge that the funds are
held by such depositor in a fiduciary capacity, and do
not belong to him personally. The defendant bank, in
the case at bar, had full knowledge that the money in
controversy belonged to Settle's wards, and unless it
has shown some ground for taking this case out of the
general rule, the appropriation of said money to the

payment of his individual debt was unauthorized. Morse on Banking [2 Ed.], page 37; *Lessing v. Vertrees*, 32 Mo. 431; Schouler on Executors and Administrators, sec. 352; *Cowgill v. Linville*, 20 Mo. App. 138; *Payne v. Bank*, 43 Mo. App. 377; *Bank v. Gillespie*, 137 U. S. 411; *Greenwood v. Burnes*, 50 Mo. 52; *McDuffie v. McIntire*, 32 Amer. Rep. 500. (2) While the money remained the property of Settle's wards, and was due to him as guardian, the bank had no right to use it to pay his debt.

SMITH, P. J.—The salient facts of this case as disclosed by the record, are that one Settle who was guardian of his minor children, was removed by the probate court and the plaintiff was appointed in his stead.

While he was acting as guardian, and between the twentieth of May, 1889, and the thirteenth of August, 1890, he deposited to his credit in the defendant bank, a corporation, the sum of $1,868.05. That in September, 1889, he borrowed of defendant bank $200, for which he gave his note; that in August, 1890, the payment of the note being demanded, he agreed with the defendant bank that when the probate court at its regular August term, 1890, made him his annual allowance against the funds of his wards for their support, he would, out of the same, pay his note, and that the defendant bank might charge the amount off against his account; that the probate court afterwards did make Settle an allowance against the estate of his wards amounting to $250, and thereupon the defendant bank charged off said note amounting, principal and interest, to $217.95; that the balance of the money so deposited, amounting to $638.50, was, on the eighteenth of December, 1890, paid to the plaintiff by the defendant bank, on the check of Settle as guardian.

It further appears that after giving the check just mentioned and making a payment of $2,005, Settle was still indebted to plaintiff, his successor, in the sum of $679.02; that he gave another check to his successor on the defendant bank for $217.95, the amount applied to the payment of his individual note by the defendant bank, the payment of which was refused.

This suit was brought by the plaintiff against the defendant bank to recover the amount of the check. The case was tried by the court sitting as a jury which resulted in judgment for plaintiff, to reverse which defendant bank has appealed.

It may be stated as a rule, deducible from many authorities, that a bank cannot use a deposit to pay the individual debt of the depositor due to it, when it has knowledge that the deposit is held by the depositor in a fudiciary capacity and does not belong to him personally. Meorse on Banking [2 Ed.], p. 37; *Lessing v. Vertrees*, 32 Mo. 431; Schouler on Executors and Adm'rs, sec. 352; *Cowgill v. Linville*, 20 Mo. App. 138; *Payne v. The Bank*, 43 Mo. App. 377; *Union Stock Yards National Bank v. Gillespie*, 137 U. S. 411; *Greenwood v. Burnes*, 50 Mo. 52; *McDuffe v. McIntire*, 32 Am. Rep. 500; *Shaw v. Spencer*, 100 Mass. 320; *Smith v. Ayer*, 101 U. S. 320; *Colt v. Lasnier*, 9 Cow. 320; *McLeod v. Drummond*, 17 Vesey, Jr., 153; *Walker v. Bank*, 25 Fed. Rep. 247. When the depositor seeks to pay his own debt to the banker by an appropriation of funds to his credit in a fiduciary capacity with the banker, then the banker is affected with knowledge of the unlawful character of the appropriation. Morse on Banking, section 317.

The duties of a guardian with respect to the estate of his ward are in many respects analogous to those of an executor or administrator. The statute defines the duties of a guardian, which every person who deals with

him in that capacity is bound to know. In *Kean v. Roberts*, 4 Maddock 332, it was said by the vice chancellor, that every person who acquires personal assets by a breach of trust or *devastavit* in the executor, is responsible to those who are entitled under the will, if he is a party to the breach of trust. * * * Generally speaking he does become a party to a breach of trust by buying or receiving in pledge any part of the personal assets, not for money advanced at the time but in satisfaction of his private debt, because this sale or pledge is inconsistent with the duty of executor." And any person receiving from an executor or administrator the assets of his testator or intestate knowing that such disposition of them is in violation of his duty, is to be adjudged as conniving with such representative and is responsible for the property received. And it has been held that when one had reasonable grounds for believing that the administrator or executor is, in the very transaction, converting such assets to his private use, such a person can take no advantage from the transaction, and the title to what he has acquired cannot be upheld. Schouler's Ex'rs and Adm'rs, section 352, and cases cited.

And so where an administrator had assigned promissory notes of the estate in his hands for goods for his own use, it was held a waste of the estate, and if the assignee had knowledge that the administrator was acting in violation of his trust, the right of property in the notes was not divested. *Thomasson v. Brown*, 43 Ind. 203. And so, too, it has been held that when an administrator holding title to personal assets, he holds them in trust to pay debts of deceased and discharge legacies; and property thus held, acquired from him by third parties with knowledge of his trust and in disregard of its obligations, can be recovered. Whoever takes it for an object other than the general pur-

pose of the trust, must look to the authority of the trustee or he will act at his peril. *Smith v. Ayer, supra; Colt v. Lasnier, supra.* The rule was laid down in the house of lords that, "when an executor parts with any portion of the assets of the testator under such circumstances as the purchaser must know that they were sold not for the benefit of the estate, but for the executor's own benefit, the result is as if he were himself, in respect to those assets, the executor. *Walker v. Taylor,* 4 Law Times (N. S.) 845.

But, as we understand it, the rules announced in the authorities just referred to, are really not disputed by the defendant bank, but its contention is, that the agreement with Settle takes the case out of the operation of these rules. If Settle was indebted to his wards in a much larger sum than that which he had on deposit in defendant's bank, as appears was the case, would the fact that he had obtained an allowance in his favor against the estate of his wards confer upon him authority to apply any part of this deposit as guardian in defendant's bank to the payment of his individual debt to the bank? If, after deducting his allowance from the amount he was indebted to his wards he was still in their debt, from whence was derived the power to use the money of his wards in defendant's bank to pay his own debt? Unless the guardian himself could hold this money against his wards, certainly the bank could not. The bank could have no greater right to the money than Settle had. The deposit was to his credit as guardian, so the pertinent question is, when did it cease to be due him in his representative quality and become due him individually. Surely the allowance did not *ipso facto* accomplish that result. It is not pretended that the order of allowance authorized the application of any part of the deposit to its payment. It is quite difficult to understand how the mere promise of Settle

to pay the note of the bank out of the deposit, in case he obtained an allowance by the probate court, could, in that event, have the effect to change his relation to any part of the deposit.

If this deposit was all of the money in his hands due his wards, then it would have been proper to have paid the allowance out of it, or, which is the same thing, given parol direction to the defendant bank to apply an amount of it equal to the allowance, or less, to the payment of the note which it held against him. In order to sustain the action of the defendant bank in making the application of the deposit, it must show that Settle had become the individual owner of the part of it so applied. The act was *prima facie* unauthorized and unlawful. The defendant knew the money deposited belonged not to Settle, but to his wards. It knew that the application of a part of the deposit to pay his individual note was in general disregard of the obligations of his trust. *Cowgill v. Linnville*, 20 Mo. App. 138. If the state of the account of Settle with his wards, at the time of the application of so much of his bank deposit as paid his note to the bank, was such as to show that he had faithfully discharged his trust according to law and that he has not at that time or at the time of the allowance in his favor, indebted to, or behind with, the estate of his wards, then it is plain enough that he could apply a part of the bank deposit to the payment of his allowance, but the burden of showing this rested upon the defendant bank, who, in the absence of such showing, must be held to have knowingly applied the money of the ward's estate on deposit with it, to the payment of the individual debt of Settle under an agreement that did not confer on it the semblance of an authority to do so.

In view of the dim light which the few meager facts disclosed in the record throw upon the transac-

tion between the defendant bank and Settle, we must conclude that the agreement under which the wards' funds were misapplied to the payment of Settle's individual debt, was no more than an artful scheme by which it was intended by defendant bank to collect a. loan imprudently made. Its effect was to facilitate the waste of the wards' estate by the guardian. No. such an agreement can have the sanction of the law. It was without the power of the guardian.

The *prima facie* liability of the defendant bank is. conceded. We are unable to find anything in the defendant's case which rebuts such liability. The agreement pleaded and admitted does not relieve the act of Settle, in misapplying the money of his wards to, the payment of his individual debt, of the taint of illegality. Nor can the defendant dispute its liability to the plaintiff, who is the representative of the wards, since it knowingly participated in the misapplication of the deposit. There is nothing in the agreement pleaded which takes the case out of the ordinary rule which we stated at the outset.

No error is perceived in the action of the court in respect to the giving or refusing of declarations of law. The theory of law upon which the issues were determined is in harmony with the views herein expressed, and with which no fault has been found.

It results that the judgment is affirmed. GILL, J. concurs. ELLISON, J. dissents.