WESTERN CASUALTY & SURETY COMPANY, a Corporation, Plaintiff-Appellant,

v.

FIRST STATE BANK OF BONNE TERRE, a Corporation, Defendant-Respondent.

No. 31867.

St. Louis Court of Appeals.

Missouri.

May 18, 1965.

 

 
 

Buerkle & Lowes, Albert C. Lowes, Jackson, for plaintiff-appellant.

Dearing, Richeson, Weier & Roberts, J. Richard Roberts, Hillsboro, W. Oliver Rasch, Bonne Terre, for defendant-respondent.

DOERNER, Commissioner.

Plaintiff, the surety on a guardian's bond on which it had sustained a loss of $1118.53, sought in Count I of its petition to recoup from the defendant bank, and in Count II from Edward Gibson, the principal. The court rendered a judgment against

plaintiff and in favor of the bank on the first count, and in favor of plaintiff and against Gibson by default on the second. Plaintiff alone has appealed.

Since this is an appeal in an equity case and the appellant has brought up the entire record we must try the matter de novo. In so doing we take into consideration only such competent evidence as we deem admissible, and reach our own conclusions without regard to the trial court's findings. Heald v. Erganian, Mo., 377 S. W.2d 431. As the record consists in the main of a stipulation of facts and documentary evidence no question of deference arises. See McMahon v. May Department Stores Co., Mo., 374 S.W.2d 82.

It is undisputed that on or about April 3, 1962, the Probate Court of St. Francois County appointed Edward Gibson guardian of the estate of his minor son, Ellis, whose age does not appear. Gibson as guardian and plaintiff as his surety executed and filed a bond in the usual form. The only asset of the ward was the sum of $2500 which the guardian invested in a time certificate of deposit issued to him as guardian by the defendant bank, numbered 10343, dated April 10, 1962, and due one year after date with interest at the rate of four per cent. At some subsequent time, presumably in November, 1962, Ellis, the ward, appeared at the bank and asked Robert B. Smith, its assistant vice-president, for some of the funds which his father, the guardian, had deposited. Smith told Ellis that he couldn't issue "regular funds" and that he would have to talk to the guardian. Thereafter Ellis returned to the bank with his father, and according to Smith "they" told him that they wanted to use the funds "For hospitalization," but for whose hospitalization does not appear. Smith gave Gibson $200, and prepared a negotiable promissory note for $200, dated November 24, 1962, payable to the defendant bank or order on demand, with interest at 6%, which was signed "Edward C. Gibson." The form was that for a collateral note, and provided that Gib-

son assigned, pledged and delivered to the bank as collateral " * * * Our C/D #10343 for $2500.00 Due 4–10–63," the certificate of deposit which the bank had issued to Gibson as guardian. Smith conceded on cross-examination that the payment to Gibson was a loan, and that there was no authority from the Probate Court respecting the transaction.

Stanley E. Mayberry, assistant cashier of the defendant bank, testified on its behalf that thereafter Ellis called him on the phone and said that he wanted $200 to buy clothes to go back to school. Mayberry told Ellis that the bank could not do it without the guardian of the estate being present. Later Gibson came in to the bank (perhaps with Ellis, although that is not clear) and Mayberry gave Gibson another $200 in return for which Gibson executed a promissory note for $200 payable to the bank or order, dated November 28, 1962, due on demand, with interest at 6%. The form used was the same as the note of November 10, 1962, the certificate of deposit previously issued to the guardian was likewise pledged as collateral security, and this note was also signed "Edward C. Gibson." Mayberry testified on direct examination that in each instance the note "was attached and placed with the time certificate," from which we gather that Gibson delivered the certificate of deposit to the defendant bank. Mayberry likewise agreed, on cross-examination, that "technically" the transaction was a loan, that interest of 6% was charged, and that there was no "written authority from any authority to deliver this sum of money."

Mayberry also handled the third transaction in which Gibson and Ellis requested an additional $200. That sum was likewise paid to Gibson, and a third note for that amount, dated December 20, 1962, due on demand and if no demand on April 10, 1963, was executed by "Edward Gibson." As with the first two, the certificate of deposit issued to the guardian was pledged as collateral security.

The fourth transaction was handled by Marvin Ringer, Sr., cashier of the defendant bank. He testified on direct examination that Gibson contacted him to get an additional $500 and that he told Gibson that " * * * we couldn't advance him any money without a court order from the Probate Judge." He stated that Gibson later returned with an order from the Probate Court, dated January 30, 1963, and that $500 was then given to the guardian and a note taken from him. Exhibit D, the fourth note, dated January 30, 1963, is similar to the preceding three except as to the amount, but in this instance the words "Estate Ellis Edward Gibson, Minor" are printed above the signature "Edward Gibson," and the word "Guardian" below. The printing obviously was done by a hand other than that of Gibson. As with the first three notes, the certificate of deposit was listed as the collateral security pledged. The order from the Probate Court referred to by Ringer, dated January 30, 1963, recites that:

"Upon the Petition of the guardian herein and the evidence therewith submitted, it is hereby ordered by the court that this guardian is authorized and directed to withdraw a sum not to exceed $500.00 from the funds of this ward on deposit with the First State Bank of Bonne Terre and that such sum be allowed and Ap-appropriated (sic) to this guardian for payment of necessary medical expenses of the ward. A certified copy of this order shall serve as authority for said bank to permit the withdrawal of said funds."

By its terms the certificate of deposit for $2500 became due and payable to the guardian on April 10, 1963, together with interest thereon of $100. The amount then due on the four notes to the bank executed by Gibson aggregated $1100, together with interest of $18.53. On that day the bank subtracted $1118.53 from the $2600 due the guardian on the certificate and applied it to the payment of the principal and interest due on the notes.

It appears from the record that beginning on February 23, 1963, the Probate Court had repeatedly notified the guardian to file his annual settlement, and that the guardian had failed to do so and had confessed that he did not have and could not account for all of the assets of the ward's estate. By an order of April 26, 1963, which recited such facts, the Probate Court revoked Gibson's letters, removed him as guardian, and fined him $100. By the same order the court found " * * * that the unaccounted for assets of this estate consisted of $2,500.00 in cash which sum was invested in a federally chartered and insured savings and loan institution which paid earnings at the rate of $4\frac{1}{2}\%$ per annum compounded semi-annually and should have earned the sum of $113.76 while under the control of said guardian." It further found that unnecessary court costs in the amount of $42.75 had accrued because of the guardian's failure to account, and entered judgment against Gibson as guardian and plaintiff as his surety in the amount of $2756.51. One A. C. Sullivan, Jr., was by the same order appointed successor guardian, and the judgment was ordered paid to him.

It appears that plaintiff subsequently filed in the Probate Court an application for an order to take charge of the assets belonging to the ward which were in defendant's possession. The transcript contains a copy of the order made by the Probate Court on June 7, 1963, in which the court found that plaintiff was the surety; that Gibson as guardian had deposited the ward's $2500 with defendant bank in the form of the time certificate; that though notified to do so Gibson had failed to file his annual settlement and had been removed; that the judgment for $2756.51 had been entered against Gibson and plaintiff as his surety; that Sullivan had been appointed and had qualified as guardian; that

"6. There is in the possession of the First State Bank of Bonne Terre, Bonne Terre, Missouri, a bank draft in the amount of $1481.47, standing in the name of Edward Gibson, Guardian of Ellis Edward Gibson and is a proper asset of the estate of the minor.

"7. That this sum of $1481.47 is properly an asset of the estate of the minor, and should be turned over to the new guardian and the sum offset against the $2756.51 ordered by this court to be paid by the petitioner to the successor guardian, A. C. Sullivan, Jr.

"8. Petitioner stands ready, willing and able to pay the difference between $2756.51 and $1481.47 to Mr. A. C. Sullivan, Jr., as guardian of the estate of Ellis Edward Gibson."

and the court ordered that plaintiff was authorized to take possession of the $1481.47 held by the defendant bank and turn the same over to the successor guardian; to pay the additional sum of $1275.04 of its own funds to the successor guardian; and that upon the filing of receipts from the successor guardian for said sums the plaintiff would stand discharged from all further liability. The record further shows that the plaintiff thereafter filed a petition in the Probate Court for an order discharging it on its bond, and that on June 14, 1963, the Probate Court made an order in which it found that plaintiff had paid said sums to the successor guardian and filed his receipts therefor, and ordered and adjudged that plaintiff stood discharged from any further obligations on its bond.

The gist of plaintiff's claim as pleaded in the count concerning the defendant bank was that the four loans had been made "to the guardian" without any authorization from the Probate Court; "That on or about the 10th day of April 1963, First State Bank of Bonne Terre, knowing that said monies belonged to the ward, wholly without authority converted to its own use monies belonging to the ward, in that it ap-

plied the proceeds of said certificate of deposit to the four notes referred to in paragraph 5, making the total sum misapplied of $1118.53. * * *"; and that by paying the judgment rendered by the Probate Court against the guardian and plaintiff as his surety " * * * the plaintiff became subrogated to the rights of the obligee or ward against the defendant." The prayer was for judgment for $1118.53, together with interest and costs. Defendant denied the guardian's lack of authorization and pleaded the order of January 30, 1963, as authority for the loan made on that date. It also pleaded good faith, reliance on the representations of the guardian and the ward, denied that plaintiff had become subrogated to the rights of the ward, alleged that the guardian, the ward and plaintiff were estopped to assert a claim against it, pleaded that by the Probate Court's order of June 7, 1963, plaintiff's claim merged in said order and became res adjudicata, and that by virtue of the order plaintiff was estopped to maintain this proceeding.

 There can be no question regarding the guardian's authority to invest the ward's money in the time certificate of deposit. Section 475.190, subd. 1(10), RSMo 1959, V.A.M.S., expressly empowers a guardian to invest the money of his ward in "(10) Savings accounts and time deposits, including time certificates of deposit in banking institutions." However, in that connection it should be borne in mind that a certificate of deposit is not evidence of an ordinary deposit of funds, as in a savings or checking account, and that in legal effect such a certificate is a note of the institution which issues it, payable only according to its terms. Farmers' & Traders' Bank v. Harrison, 321 Mo. 815, 12 S.W.2d 755; Phillips v. Alford, Mo.App., 90 S.W.2d 1060. This distinction is important because of the interpretation defendant places upon the four transactions by which the guardian obtained from it a total of $1100. Defendant takes the position that each of these transactions was a withdrawal by the

guardian from the ward's $2500 represented by the certificate of deposit. With that contention we cannot agree, for it flies in the face of the conceded facts. By its terms the certificate of deposit was not due and payable until April 10, 1963, a date long after the four transactions had been consummated. Hence there was no withdrawal, for there was no deposit from which a withdrawal could be made. What the guardian actually did, as evidenced by the four collateral interest-bearing notes and the testimony of the bank's own officers, was to borrow the four sums totaling $1100 from the defendant, which loans were made by the bank from its own funds, and on each of which the defendant required the guardian to pledge the certificate as collateral security.

■ It is clear that in borrowing from the defendant and attempting to obligate the estate of the ward for the payment of such loans the guardian exceeded his authority. A guardian is a creature of statute and has no inherent authority as such, but only those powers prescribed by statute. Scott v. Royston, 223 Mo. 568, 123 S.W. 454; In re Cordes' Estate, Mo.App., 116 S.W.2d 207. Section 475.125 of our present probate code provides in part that, " * * The court may authorize the guardian to borrow money and obligate the estate for the payment thereof if the court finds that funds of the estate for the payment of such obligation will be available within a reasonable time and that the loan is necessary for the support * * * of the ward or for the maintenance of his property * * *." A guardian may not, therefore, bind the estate of his ward by borrowing money for his support or his education without first obtaining an order from the probate court authorizing him to do so. Buie's Estate v. White, 94 Mo.App. 367, 68 S.W. 101; In re Taylor's Estate, Mo.App., 5 S.W.2d 457. It is undisputed that the guardian did not obtain any authority from the probate court before he borrowed the first three sums from the defendant. As to the fourth loan, the bank apparently but

belatedly realized the necessity of authorization from the probate court because Ringer, its cashier, testified that when the guardian contacted the defendant to obtain an additional $500 he told Gibson that the bank could not, " * * * advance him any money without a court order from the Probate Judge." The guardian did obtain the order of January 30, 1963, but by its terms all that order did was to authorize the guardian " * * * to withdraw a sum not to exceed $500.00 from the funds of this ward on deposit * * *" with the defendant. It did not purport to authorize the guardian to borrow from the defendant nor to pledge the certificate of deposit as collateral security, and such authority cannot be read into the order.

■ In connection with its argument that the guardian was "authorized to receive the funds that he deposited" and that the bank had the right to pay them to him defendant cites Section 456.250, V.A.M.S. Supp. of our Uniform Fiduciaries Law, Laws 1959, S.B. No. 121, Sec. 2. That section provides that a person who in good faith pays any money to a fiduciary " * * * which the fiduciary as such is authorized to receive * * *" is not responsible for the proper application thereof by the fiduciary. That statute might have some application if the certificate of deposit had matured and the defendant paid the amount due thereon to the guardian. But that is not this case. What the bank did here was to make four unauthorized loans to the guardian, for the payment of which he pledged the certificate. The money loaned was not funds which "the fiduciary as such [was] authorized to receive" because, as we have discussed, the guardian had no authority to borrow. Nor does Section 456.260, also cited, furnish the defendant with any exoneration for accepting the certificate as collateral for the unauthorized loans. It is elementary that one who deals with a guardian in his capacity as such is charged with knowledge that a guardian's powers and duties are defined and circumscribed by statute. Phillips v. Phoenix Trust Co.,

332 Mo. 327, 58 S.W.2d 318; Continental Casualty Co. v. Pleitsch, Mo.App., 111 S.W. 2d 956. The bank was at all times aware that it was dealing with a guardian and that the money invested in the certificate of deposit belonged to the ward. According to the testimony of its officers it had actual knowledge that the guardian was borrowing the funds and pledging the asset of his ward without prior authorization of the probate court, and for a purpose which required the approval of the court. Under these circumstances the defendant is chargeable with actual knowledge that the guardian was committing a breach of his obligation in borrowing the $1100 and pledging the certificate as security for the payment thereof. Continental Casualty Co. v. Pleitsch, supra; Mayer v. Citizens' Bank of Sturgeon, 86 Mo.App. 422; Johnson v. Payne & Williams Bank, 56 Mo.App. 257.

Section 475.135 as amended, Laws 1959, H.B. No. 537, Sec. 1 provides that "No contract shall bind the estate of any minor * * * unless the same is made by the guardian with the approval of the court or made by the ward with the consent of the guardian and approval of the court," except in certain instances not here applicable. The effect of this statute is "* * * to expressly invalidate contracts for the use of any of a minor's funds without the approval of the probate court, * * *" Weir v. Kickbush, Mo., 353 S.W. 2d 627, 634. Since the guardian had not been authorized to borrow from the defendant and obligate the estate of his ward, as required by Section 475.125, it necessarily follows that the notes executed by the guardian to the defendant were not valid obligations of the ward's estate. Consequently the defendant had no legal right or authority to do what it did, apply part of the $2600 it owed on the certificate to the payment of the $1118.53 due on the notes. When the certificate matured on April 10, 1963, its contractual obligation and duty was to pay to the guardian for the benefit of the ward the entire $2600 it owed on the certificate, in accordance with the terms of that instrument. Instead, it made the set-off and took the position that all that it held for the benefit of the ward was the sum of $1481.47.

It will be recalled that following the removal of Gibson as guardian and the rendition of the judgment for $2756.51 against him and plaintiff as his surety, the probate court by its order of June 7, 1963, authorized plaintiff to obtain that sum of $1481.47 from the defendant. Pursuant to that order plaintiff did so, and paid it, together with $1275.04 from its own funds, in satisfaction of the judgment. Having paid the judgment which made the ward whole, the plaintiff became subrogated to the rights of the ward against plaintiff. See Brown v. Bibb, 356 Mo. 148, 201 S.W.2d 370; Cowgill v. Linville, 20 Mo.App. 138; 83 C.J.S. Subrogation §§ 47 and 54e.; 50 Amer.Jur., Subrogation, Secs. 49 and 54. The ward, or the successor guardian on his behalf, could have recovered from the defendant that part of the proceeds of the certificate which was wrongfully applied to the payment of the guardian's four notes, and under the doctrine of subrogation plaintiff is entitled to do so. Cowgill v. Linville, supra. Defendant argues that plaintiff has no right of subrogation against it because (1) "* * * If it were found that the guardian committed a wrong, the bank did not knowingly participate * * *"; (2), since the guardian and the ward represented to the defendant that the money borrowed was needed for maintenance and medical care, as between plaintiff and defendant the equities are in favor of defendant; and (3), that the guardian was primarily liable and defendant only secondarily, and that there can be no subrogation against one secondarily liable. The fallacy in these contentions is the erroneous assumption that only the guardian, and not the defendant bank, committed a wrong. It is true, as we have shown, that the guardian committed a wrong in borrowing from the defendant. But it is equally true, as we have also shown, that since the loans were not valid obligations of the ward's estate

the defendant also committed a wrong when it applied part of the proceeds of the certificate to the invalid notes. In fact, it was the bank's misappropriation of these proceeds which was the immediate cause of the dissipation of the ward's money. Hence the defendant is not secondarily liable, but is jointly and primarily liable with the guardian. As stated by this court in Continental Casualty Co. v. Pleitsch, Mo.App., 111 S.W.2d 956, 959:

"It is elementary that one who deals with a curator in his capacity as such must ascertain the curator's authority for any proposed action, since he not only knows that the curator is dealing with the funds or property of his ward, but is also charged with knowledge that a curator's powers and duties are defined and circumscribed by statute. Phillips v. Phoenix Trust Co., 332 Mo. 327, 58 S.W.2d 318. It necessarily follows, therefore, that, where one receives and accepts from a curator the assets of his ward, knowing that such disposition of the ward's assets is in contravention of the curator's powers and duties, he is to be adjudged in law, however blameless his motives and purposes may actually have been, as having participated with the curator in his dissipation of his ward's estate, and in consequence is to be held responsible for the money or property received. Johnson v. Payne & Williams Bank, 56 Mo.App. 257, 264; 12 R.C.L. p. 1172, § 63; 28 C.J. 1250."

Defendant further argues that since the probate court by its order of January 30, 1963, allowed and appropriated $500 to the guardian for the payment of necessary medical expenses of the ward, the guardian was entitled to credit therefor, and plaintiff could not be subrogated to any rights thereto. But the mere fact that the guardian was authorized to expend $500 of the ward's estate for that purpose does not mean that he in fact did so. The guardian was still under a duty to account to the court by showing that the money had actually been spent for that purpose. According to the probate court's order of April 26, 1963, he confessed, in effect, that he could not do so, and judgment was accordingly entered against him, and plaintiff as his surety.

Defendant also asserts that the judgment should be affirmed because the circuit court was without jurisdiction "and the exclusive jurisdiction is vested in the probate court in a proceeding to discover assets," citing Section 475.160. The thread of defendant's reasoning is that plaintiff stands in the shoes of the ward; that the claim for an asset of the ward's estate must be brought in the probate court; that "Even if the alleged subrogation be considered an equity matter. in the instant case it would be 'tied to what is necessary and practical in the exercise of the probate court's powers in the matters pertaining to probate business,' * * *" citing First National Bank of Kansas City v. Mercantile Bank & Trust Co., Mo., 376 S.W.2d 164; and hence that the exclusive jurisdiction was in the probate court. If this proceeding was one by the ward or his successor guardian there might be some merit to defendant's contention. But this is an action by plaintiff on its own behalf, in which it invokes the doctrine of subrogation, "* * * invented by equity to compel the ultimate discharge of a debt or obligation by the one who in fairness and good conscience ought to pay it. * * *" McKenzie v. Missouri Stables, 225 Mo.App. 64, 34 S.W.2d 136, 138; State ex rel. McCubbin v. McMillian, Mo.App., 349 S.W.2d 453, 459. Traditionally, circuit courts have had exclusive jurisdiction in what has been termed "purely equitable matters." First National Bank of Kansas City v. Mercantile Bank & Trust Co., supra. We consider this to be such an action.

Lastly, defendant contends that the trial court reached the correct result and the judgment in its favor should be affirmed because the petition failed to state a claim upon which relief may be granted. The

case of United States Fidelity & Guaranty Co. v. Mississippi Valley Trust Co., Mo.App., 153 S.W.2d 752, cited by the defendant for the proposition that an allegation of "bad faith" was necessary, is distinguishable on the facts; but if it was necessary, plaintiff's allegation that defendant " * * * 'knowing that said monies belonged to the ward, wholly without authority converted to its own use monies belonging to the ward * * *' " is a sufficient statement of the facts showing bad faith. We do agree with defendant that the word "converted" was ill-chosen, for technically trover lies only for specific chattels wrongfully converted, and not for money had and received. Anderson Electric Car Co. v. Savings Trust Co., 201 Mo.App. 400, 212 S.W. 60. But plaintiff alleged that defendant converted the money belonging to the ward " 'in that it applied the proceeds of said certificate of deposit to the four notes referred to in paragraph 5, making a total misapplied of $1,118.53.' " Thus plaintiff pleaded the essential facts, although it may have erroneously characterized what was done, and while perhaps defective, plaintiff's petition did not fail to state a claim upon which relief may be granted. Furthermore, the sufficiency of the petition was not attacked in the trial court and is first raised on appeal, and what was said of a similar situation in Davis v. Roberts, 365 Mo. 1195, 295 S.W.2d 152, 154, is applicable here:

" * * * It is sufficient to say that the petition was not attacked in the trial court; that the petition states a claim upon which equitable relief may be granted; and that it is immaterial that certain facts are stated which show that plaintiff is not entitled to all of the relief he asks. The rule is well settled that when a petition, which states a claim (although defectively) upon which relief may be granted, is not assailed in the trial court, it is too late to challenge the sufficiency for the first time on appeal. Stephenson v. Stephenson, 351 Mo. 8, 171 S.W.2d 565, 569(19). In essential respects, however, the evidence conforms to the pleadings and a determination of the sufficiency of the evidence to sustain the relief granted will fully dispose of the assignment."

For the reasons stated the judgment should be reversed and the cause remanded to the trial court with directions to enter a judgment in favor of plaintiff and against the defendant bank for the sum of $1118.53, together with interest thereon at the rate of 6% from June 14, 1963, and costs. The Commissioner so recommends.

PER CURIAM.

The foregoing opinion by DOERNER, C., is adopted as the opinion of this court. Accordingly, judgment is reversed and the cause remanded to the trial court with directions to enter a judgment in favor of plaintiff and against the defendant bank for the sum of $1118.53, together with interest thereon at the rate of 6% from June 14, 1963, and costs.

WOLFE, P. J., RUDDY, J., and ROY W. McGHEE, Special Judge, concur.