HENRY MARTIN, Respondent, *v.* JOHN KNAPP *et al.*, Appellants.

1. *Limitations* — *Administrator's bond* — *Construction of statute.*— An action on an administrator's bond has ten years to run from the date of the accruing of the action. (R. C. 1855, ch. 103, Art. II, ¿ 2.) Section 9, ch. 191, Gen. Stat. 1865, amending section 3, Art. II, of the practice act of 1849 (Sess. Acts 1849, p. 74), was intended to enlarge the range of the ten years' limitation, as applied to personal actions, so as to include actions upon written instruments, where the payments contemplated by the obligation were to arise indirectly and collaterally as well as directly. Section 48, Art. I, ch. 2, R. C. 1855 (Gen. Stat. 1865, ch. 120, ¿ 49), limiting actions against the sureties of administrators to seven years, is restrictive in its character, and was framed upon the evident hypothesis that the general limitation act provided a longer time in which such suits could be brought.

*Appeal from St. Louis Circuit Court.*

*Sharp & Broadhead*, and *Lackland, Martin & Lackland*, for appellants.

The bond sued on, taken in connection with its conditions, is not a writing for the payment of money; and the period of limitation is five years, and not ten. (Gen. Stat. 1865, ch. 191, §§ 9, 10; Little v. Mercer, 9 Mo. 221; Crigler v. Quarles, 10 Mo. 324.)

*Krum, Decker & Krum*, for respondent. ·

The action against the securities on the bond is not limited to five years. In the revision of 1855, the words "direct," before "payment," and "debt," after the word "action," as they appear in the revision of 1845, are intentionally omitted. This ten-year limitation of 1855 is broad enough to embrace all actions upon any writing for the payment of money, whether certain or uncertain, liquidated or unliquidated, upon express or implied contract. (Reyburn v. Casey, 29 Mo. 129; same case, affirmed, 31 Mo. 252; Moorman v. Sharp, 35 Mo. 283; 39 Mo. 22; R. C. 1855, p. 131, § 48.)

CURRIER, Judge, delivered the opinion of the court.

The Probate Court of St. Louis county appointed John W. Wills administrator upon the estate of John Martin, deceased.

Wills accepted the appointment, and duly filed his administration bond in the penal sum of $12,000, with the defendants as his sureties. The bond bears date August 29, 1856, the condition thereto providing that "if John W. Wills, administrator of the estate of John Martin, deceased, shall faithfully administer said estate, account for, pay, and deliver all money and property of said estate, and perform all other things touching said administration, required by law, or the order or decree of any court having jurisdiction, then the above bond to be void, otherwise to remain in full force."

March 16, 1860, Wills made a final settlement of his administration account, the sum of $7,076.44 being found in his hands subject to distribution, and distribution thereof was ordered accordingly, the sum of $3,538.22 being directed by the decree to be paid to the plaintiff.

February 28, 1868, an execution reciting the decree of March 16, 1860, was issued by the Probate Court against Wills for the amount thereby ordered to be paid to the plaintiff, it appearing that the same had been demanded, and payment thereof refused. The execution was returned *nulla bona*.

March 7, 1869, a *scire facias* was sued out against the defendants, as Wills' securities, and judgment thereupon rendered against them in the Probate Court. An appeal was taken to the Circuit Court, and from that court to this.

The only defense relied upon here is the statute of limitations. The defendants take the ground that the statute commenced running from March 16, 1860, the date of the decree of distribution, and that the case is governed by section 10, chapter 191, of the General Statutes, which provides a limitation of five years. On the other hand, the plaintiff claims that the case is governed by the first clause of section 9 of that chapter, which provides a limitation of ten years. Whether the action falls within the one or the other of these sections is the question to be decided. These sections are the same as sections 2 and 3, article II, of the limitation act in the revision of 1855.

The first clause of section 9 above referred to, fixing a limitation of ten years, is in these words: "An action upon any

4—VOL. XLV.

writing, whether sealed or unsealed, for the payment of money or property." The defendants' proposition is that the bond executed by them is not a writing "for the payment of money or property" within the intent and meaning of this provision, and that it consequently falls within the class of obligations which are barred in five years, under the provisions of the next succeeding section. I am not aware that it has ever before been claimed that an action based upon the obligations of an administrator's bond was barred in five years from the date of the accruing of the action. The argument by which that proposition is now sought to be sustained rests upon an artificial construction of the language of different provisions of the limitation enactment. I can not think that the construction so ingenuously contended for gives the true interpretation and development of the intentions of the Legislature. It was provided by the act of 1845 (R. S. 1845, p. 716, § 1), that all actions founded on any writing, whether sealed or unsealed, for the direct payment of money or property, should be barred in ten years, and that (§ 2) "all actions of debt founded upon any contract or liability" not otherwise limited, should be barred in five years. The act contained no provision limiting the time of suing upon the covenants of a deed. In 1849, the Legislature remodeled the limitation act and extended its provisions (Sess. Acts 1849, p. 74). Personal actions limited to ten years were divided into three classes, namely (Art. II, § 3) : 1st, all actions upon any writing, etc., for the "direct" payment of money or property, as in section 1 of that of 1845 ; 2d, actions upon covenants of warranty and seizin in a deed conveying real estate ; 3d, actions for relief not otherwise provided for ; the language in which the second and third classes were described being the same as the second and third subdivisions of section 9 of the present law. Actions limited to five years were described in the same language employed in section 10 of the existing statute, so far as that language has any bearing upon the present inquiry.

In the revision of 1855, the act of 1849 was substantially re-enacted, with two or three modifications. One of these changes consisted in omitting the word "direct," in describing actions

founded upon written instruments for the payment of money or property, so as to include in the ten-years' limitation all actions founded on such instruments, whether the payment were "direct" or indirect. The residue of the section was continued as in the act of 1849, being the same as section 9, chapter 191, of the General Statutes now in force. It is manifest, therefore, that the Legislature, by the change introduced in 1855, intended to enlarge the range of the ten-years' limitation, as applied to personal actions, so as to include a class of actions not embraced in the enactment of 1849—that is, actions upon written instruments, where the payments contemplated by the obligation were to arise indirectly and collaterally as well as directly. Unless the law as amended is construed to have this effect, then the amendment was nugatory, and the purposes of the Legislature are unaccomplished.

This view of the case is not met by the argument drawn from the provisions of the statute respecting suits founded upon the covenants in a deed conveying real estate; for these provisions, as they now stand, were in the law prior to the introduction of the amendment. The amendment was not restrictive, but was clearly intended to enlarge the scope of the first clause of the section under consideration. Unless the section as amended is construed so as to embrace suits where the payments result collaterally, and consequently, in other words, indirectly, to what class of actions is the amendment to be applied?

That there was no intention on the part of the Legislature to limit action on the bonds of administrators to five years, is evident from other provisions of the statute. It is provided in the administration enactment (R. C. 1855, p. 121, § 48) that all suits prosecuted by an administrator *de bonis non* against the securities of his predecessor, upon their administration bond, "shall be commenced within seven years after the revocation or the surrender of the letters, or the death of the principal" in such bond. The same provision is continued in the General Statutes (Gen. Stat. 1865, ch. 120, § 49). This is a limitation enactment, and it is quite inconsistent with the theory sought to be maintained by the appellants. It is restrictive in its character, and was framed upon the evident hypothesis that the general

limitation act provided a longer time in which such suits could be brought. No reason suggests itself why a distributee should be confined to narrower limits as to the time in which to sue than an administrator *de bónis non*. The reasons are the other way.

The result is, we can not accept the construction of the statute advocated by the appellants' counsel, and the judgment is accordingly affirmed. Judge Bliss concurs ; Judge Wagner absent.