STATE ex rel. LANGSTON, Appellant, v. W. J. ZORN
et al., Respondents.

St. Louis Court of Appeals, May 25, 1909.

LIMITATIONS: Administrator De Bonis Non: Action Against
Sureties. An action by an administrator *de bonis non* against
the sureties of his predecessor in office for sums due by such
predecessor to the estate in his charge and unaccounted for, must
be brought within seven years from the accrual of the cause
of action, under section 55, Revised Statutes of 1899.

Appeal from the Greene Circuit Court.—*Hon. James T.
Neville*, Judge.

AFFIRMED.

*W. J. Orr* and *Lewis Luster* for appellant.

All the defenses and contentions of the respondents
have been decided adversely to them and as to this
case are *res judicata*. Langston v. Canterbury, 173 Mo.
122; State ex rel. v. Canterbury, 124 Mo. App. 241.
Appellant's cause of action is not barred by the seven-
year statute of limitations and the learned trial court
erred in so holding. Johnson v. Johnson, 72 Mo. App.
389; Wickham v. Page, 49 Mo. 526; Nelson v. Barnett,
123 Mo. 565; State ex rel. Yeoman v. Hoshaw, 86 Mo.
198.

*James Orchard* for respondents.

The contention of the respondents is that they are
released for the reason that the suit on the adminis-
trator's bond was not commenced within seven years
after the letters of administration of Canterbury had
been revoked. Therefore these defendants as sureties
are released. R. S. 1899, sec. 55; Martin v. Knapp, 45
Mo. 51; State ex rel. v. Withrow, 108 Mo. 6.

GOODE, J.—Samuel F. Canterbury, being administrator of the estate of Thomas Johnson, deceased, his letters were revoked by the probate court of Howell county, August 13, 1906, and the appellant, T. J. Langston, was appointed administrator *de bonis non*. From the opinion of the Supreme Court in the case of Langston v. Canterbury, 173 Mo. 122, we learn Canterbury filed a final settlement to which Langston, as administrator *de bonis non*, took exceptions. In said case it appeared judgment had been rendered on the exceptions in the Howell Circuit Court, showing a balance of $12.37 due Canterbury as first administrator. This judgment was reversed by the Supreme Court because Canterbury had been allowed certain credits to which he was not entitled, and the cause was remanded for retrial. From the report of the opinion of this court in the subsequent case of State ex rel. Langston v. Canterbury, 124 Mo. App. 241, we learn that the cause passed on by the Supreme Court, was retried in the Howell circuit court and on January 7, 1904, judgment rendered on Langston's exceptions to Canterbury's settlement as administrator for the sum of $2,399, and costs, which judgment was certified to the probate court of Howell county where it was entered of record. These facts also appear in evidence in the present case, the record of the judgment of the circuit court of Howell county against Canterbury and in favor of Langston, as administrator *de bonis non*, for said sum, having been put in evidence. After judgment had been obtained against Canterbury for said sum, an action was brought April 5, 1904, in the name of the State for Langston against Canterbury and the sureties on his bond as administrator, to recover the amount of the judgment which he had failed to pay, and that is the case reported in 124 Mo. App. 241. From the opinion therein it will be learned the sureties on the bond denied they were bound by the judgment of the circuit court of Howell county of date January 7, 1904, and

alleged they had been released from liability on the
bond of Canterbury by the proceedings in said case,
interposing besides the equitable defense that Canter-
bury, as administrator, had paid, with the consent and
on the advice of the heirs of the deceased and the legal
distributees of the estate, two unprobated notes against
the deceased equalling the sum in controversy.   This
defense was allowed by the Howell circuit court on the
trial of the second cause, and the amount paid on the
notes was offset against the judgment of January 7,
1904, which was the basis of the suit on the bond.   We
held the allowance was improper, because it was con-
trary to the prior decision of the Supreme Court that
Canterbury was not entitled to credit in his final set-
tlement for the amount of those notes, as he had paid
them without their being allowed as a demand against
the estate.   In our opinion we called attention to the
irregularity of the judgment of January 7, 1904, in not
disposing of the cause as to the sureties and said it
could be set aside, the case retried and a judgment
rendered as to all the parties; in which event there
would be no occasion to prosecute the case we decided
(State ex rel. Langston v. Canterbury, the second ac-
tion) and it should be dismissed; but if the original
action had been in fact dismissed as to the sureties, as
the plaintiff insisted, said second action would be
rightly maintained against them.   What happened af-
ter the remand of the second case, instead of being
according to those suggestions, was as follows: a motion
was filed by Langston in July, 1907, in the Howell cir-
cuit court, in the original case of Langston as admin-
istrator *de bonis non* against Canterbury, as first ad-
ministrator, and the sureties on his bond, to set aside
and vacate for irregularity the judgment rendered in
said cause on January 7, 1904.   This motion came on
to be heard at the December term, 1907; and on Decem-
ber 16th, the court having found said judgment had
been taken against Canterbury alone without an order

dismissing as to his codefendants, vacated it and reinstated the cause to be proceeded with according to law. On the same day Langston voluntarily dismissed said action as to all the sureties, the court ordered that the cause proceed against Canterbury alone, and on the same day judgment was rendered in favor of Langston and against Canterbury for $2,399 and the judgment was certified to the probate court. Besides taking those steps in the original case, Langston dismissed the second action on Canterbury's bond, and then the situation was that judgment in the original action had gone against Canterbury alone and there was neither judgment nor pending case against his sureties. Afterwards, on February 3, 1908, this third action was instituted in the circuit court of Greene county in the name of the State at the relation of Langston as administrator *de bonis non*, against four of the sureties, to-wit, T. B. Kilpatrick, G. W. Galloway, J. E. Toler and W. J. Zorn. The petition in the cause sets out Canterbury's appointment as administrator on October 27, 1893; that he duly qualified as such and on the same day executed a bond to the State of Missouri in the penal sum of $15,000, with defendants as sureties, and assigns for breach that he had failed to pay the judgment given against him in the circuit court of Howell county December 16, 1907, for $2,399, in favor of Langston as administrator *de bonis non*. Various defenses were set up in the answer, but we are concerned with but one; that plaintiff's cause of action had accrued more than seven years before the institution of the suit and, therefore, was barred. This defense was sustained by the court below and plaintiff appealed.

Canterbury's letters of administration were revoked nearly twelve years before the present action was begun, but plaintiff's counsel say as the first action on the bond (the case reported in 124 Mo. App.), was instituted in April, 1904, or in ten years from the revocation, and was not dismissed until December, 1907, or

less than one year prior to the institution of the present action during the following February, this cause is saved from the bar of the statute by virtue of section 4285, allowing a second action within a year after a nonsuit is suffered in one begun in time, etc. We will not reason on this argument, because in our opinion, the second action was barred. The second case, like the one at bar, was instituted by Langston as administrator *de bonis non,* on Canterbury's bond and against his sureties. The statutes say when an executor or administrator dies, resigns or his letters are revoked and an administrator *de bonis non* has succeeded, the latter may proceed in any court having jurisdiction of civil actions, against the first executor or administrator or his sureties, or either of them, or against any other person possessed of any part of the estate, but such suits against sureties shall be commenced within seven years after the revocation or surrender of the letters or death of the principal. [R. S. 1899, secs. 54, 55.] The words of section 55 prescribe a limitation of seven years, as plainly as language can, for suits by succeeding administrators against the sureties of prior executors or administrators, and date the accrual of the cause of action from the revocation or surrender of letters or the death of the principal in the bond. That statute has been on the books since 1825, and though we have found no case reported wherein the decision was controlled by it, the Supreme Court has commented on it as if its meaning was clear. [State to use v. Pratte, 8 Mo. 286; Martin v. Knapp, 45 Mo. 48.] Counsel for plaintiff say the section contemplates only such proceedings as are authorized in section 48, which declares, in effect, if an executor or administrator resigns, or his letters are revoked, it shall be the duty of his successor to move the court to compel him to make final settlement; and on such motion, after due notice, to ascertain the amount of money, quantity and kinds

of real and personal property, and all the rights, debts and evidence of debts, papers and effects of every kind, in the hands of the outgoing administrator, or that had come into his hands and remained unaccounted for at the time of the cessation of his authority; and to enforce such order or judgment against him and his sureties, if they had notice of the proceeding, first: for the amount of money specified in the judgment, by an execution in the ordinary form; second: for all other effects, papers, etc., described in the order by attachment against the person or property of the executor or administrator.    We do not understand the argument for plaintiff at this point.    The limitation provided in section 55 does contemplate such causes of action as are contemplated in section 48 and this case involves one of them.    It also contemplates actions arising on the death of first executors or administrators.    In the contingency of either revocation of letters, resignation or death, the statutes authorize an action to be instituted in any court having jurisdiction of civil actions, to recover money found by the probate court to be due the estate from the prior executor or administrator, or the value of other assets he may have failed to account for or turn over to his successor.    Alternative remedies are afforded the succeeding administrator in sections 48 and 54, and those provided in the first section are to be obtained in the probate court, whereas section 54 authrizes an action in any court having jurisdiction of civil actions.    Likely an action under the latter section against the sureties on the administrator's bond would have to be for money or the value of property, and could not reach "effects and papers" mentioned in section 48. But so far as a court of civil jurisdiction has power to grant the relief proper to a particular case, the succeeding administrator may invoke the relief from such a court; and the only condition annexed by the statute is that the suit wherein it is invoked, must be instituted in seven years after the revocation or surrender of

letters or the death of the principal in the bond. This conclusion is made the clearer by looking at the two sections as they appear in the Statutes of 1825, where, instead of being separated they are combined in one section. [R. S. 1825, p. 98, sec. 20.] After enacting in said section for proceedings in the probate court substantially in accordance with the provisions of section 48 of the present statutes, but more elaborate, said section 20, says:

"And the succeeding administrator, or surviving or remaining executor or administrator, may proceed at law against the delinquent and his or her securities, or either of them, or against any other person being possessed of any of the estate of the deceased, until the end is fully attained; Provided, that no such suit shall be instituted against any security unless the same be commenced within seven years after the revoking, repealing or surrendering the letters, or the death of his principal, and the whole amount to be recovered against such security, shall not exceed the penalty of the bond."

From the original legislation, as well as from the statutes as they now are, it clearly appears the incoming administrator may have redress against the sureties on his predecessor's bond, not only in the probate court, but in any court having civil jurisdiction, for any defaults of the predecessor in respect of accounting for and turning over money or other assets of the estate. The alternative nature of the relief was recognized in State ex rel. Crane v. Heinrichs, 82 Mo. 542, 548. Counsel for plaintiff insist section 276 of the statutes governs the case. Said section is not a limitation statute, but one authorizing the bond of an executor or administrator to be sued on in the name of the State by a party injured by waste, mismanagement or other breaches of the bond. As the two sections relate to different subjects, it is apparent they are not in conflict. The ten years limitation for action on writings, sealed or unsealed, has been held to govern suits on the bond of an

executor or administrator by distributees and creditors. [R. S. 1899, sec. 4272; Martin v. Knapp, 45 Mo. 48; Nelson v. Bennett, 123 Mo. 564.] But that a different limitation and the one prescribed in section 55, applies when the suit is by a succeeding administrator against sureties, has been treated as obvious by the Supreme Court since the decision in State to use v. Pratte, supra. Said case was brought in the name of the State for the use of a creditor of an estate against the administrator and the sureties. Both the seven and ten years limitations were pleaded in defense, and the circuit court sustained the demurrer as to the first statute and overruled it as to the second. The Supreme Court took it for granted the law allowed "but seven years to the succeeding administrator to sue the original administrator and his securities or the securities alone," if he was dead; and therefore said it could not reasonably be supposed no lapse of time should bar creditors to sue the sureties, since there was greater reason for limiting a suit by creditors against sureties than one by a succeeding administrator; the reason being that a prior executor or administrator, who had died, might have paid the demand of the creditor and the sureties be unable to prove this fact; whereas there was less likelihood of sureties being mulcted in the suit of an administrator *de bonis non,* if their principal was not in default. The opinion then said: "And if the law will not, after a lapse of seven years, admit a demand by the successor against a preceding administrator removed for neglect of duty, it cannot be an unreasonable construction of our statutes of limitation, to say the creditors of the intestate will be precluded after the lapse of ten years against proceeding against this deceased's administratrix." It will be seen the exact question in that case was not whether an action by an administrator *de bonis non* on the bond of his predecessor would be barred in seven years, but whether an action by a creditor of the estate would be barred in

ten years. Nevertheless we take the decision to be some
authority that the first proposition, as well as the
second, is the law of the State, inasmuch as the Supreme
Court has alluded to both doctrines as sound in subse-
quent opinions. In Martin v. Knapp, 45 Mo. 48, a *scire
facias* had been issued against the sureties on an
administrator's bond, because of failure to pay the
plaintiff what he was entitled to under an order of dis-
tribution entered by the probate court. That was a pro-
ceeding by a distributee, and the statute of limitations
was interposed on the theory that it began to run from
the date of the order of distribution and barred recovery
after five years. Section 10 of chapter 191 of the Gen-
eral Statutes of 1865 was invoked, which, among other
things, barred in five years all actions on contracts,
obligations and liabilities not mentioned in section nine
of said chapter. Section nine prescribed ten years as
the limitation for actions on writings, whether sealed
or unsealed, and was relied on by the plaintiff. Hence
it appears the particular statute with which we are
dealing was not applied by the court, the action not
being by a succeeding administrator. It was held the
ten-years statute applied, and in discussing the ques-
tion, the court referred to the statute limiting
an action by a succeeding administrator to seven
years, and said it showed the intention of the
Legislature was not to restrict actions on adminis-
trators' bonds to five years. In commenting on
the seven-years statute, the court said "this is a limita-
tion enactment, and it is quite inconsistent with the
period sought to be maintained by the appellants. It
is restrictive in its character, and was framed upon the
evident hypothesis that the general limitation act pro-
vided a longer time in which such suits could be brought.
No reason suggests itself why a distributee should be
confined to narrower limits as to the time in which to
sue than an administrator *de bonis non*. The reasons

138 App.—46

are the other way." There we see the Supreme Court again treated the limitation of seven years prescribed in section 55 as applicable to actions by administrators *de bonis non* against sureties. Plaintiff brought both his actions against Canterbury's sureties after the lapse of the seven-years period, and hence, on any view of the matter, the judgment below is right and will be affirmed. All concur.