STATE of Missouri ex rel., Robert B.
PADEN, Respondent,

v.

Kenneth E. CARREL et al., Appellants.

No. KCD 30302.

Missouri Court of Appeals,
Western District.

Dec. 31, 1979.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Feb. 4, 1980.

Application to Transfer Denied
May 13, 1980.

Gerald D. McBeth, Ewing, Ewing, Carter, McBeth & Smith, Nevada, for appellant, Farm & Home Savings Assn.

Warren E. Slagle, Slagle & Bernard, Kansas City, for appellant, North American Sav. Assn.

J. W. Roberts, Strop, Roberts & Hale, St. Joseph, for appellant, First Federal Sav. & Loan Assn.

Robert B. Paden, Maysville, for respondent, Paden.

F. Philip Kirwan, Timothy L. Brake, Kansas City, for respondent, Travelers Indem. Co.

Before WASSERSTROM, C. J., Presiding, and ROBERT R. WELBORN and BARNES, Special Judges.

ROBERT R. WELBORN, Special Judge.

Action on behalf of minor for conversion of funds of minor's estate. Defendants were three savings and loan associations and corporate surety of removed guardian. Surety cross-claimed against other defendants for subrogation as to any recovery by plaintiff against surety. Trial court found for plaintiffs and awarded judgment against savings and loan associations and judgment for surety on cross-claims. Savings and loan associations appeal.

On April 25, 1973, letters of guardianship were issued by the Probate Court of De-Kalb County to Kenneth E. Carrel in the Estate of Scott Carrel, a minor. The guardian provided a bond with Travelers Indemnity as surety, in the amount of $65,-000.00.

### North American Savings Association Transactions

On May 29, 1973, Kenneth E. Carrel opened a $20,000 account with North American (NA) in the name: "Kenneth E. Carrel, Custodian for Scott Carrel." This account was closed on June 20, 1973 and a $20,000 24-month Savings Certificate No. 06–1678–03 in the name of "Kenneth E. Carrel, custodian for Scott Carrel" issued by NA. On July 5, 1973, Carrel obtained a share loan from NA of $18,000.00. The proceeds of the loan were paid by check payable to Kenneth E. Carrel. Savings Certificate No. 06–1678–03 was pledged as collateral for the loan. The note was renewed with a new note executed by Carrel at six-month intervals until July 5, 1975, with the savings certificate as collateral on each renewal. When Carrel failed to appear to renew the note in January, 1976, NA wrote reminding him that the note was due and asking him to come in. After further correspondence, Carrel failed to renew the note and on April 2, 1976, NA withdrew $18,000 from the savings certificate, which was applied to pay the note, plus $986.25 interest and $302.24 penalty for premature withdrawal of the certificate. The balance remaining of $711.51 was placed in a passbook account in the name: "Kenneth E. Carrel, Custodian for Scott Carrel."

### First Federal Savings and Loan Association Transactions

On July 5, 1973, Carrel deposited a $16,000 check on Midwest Federal Savings and Loan Association, payable to "Kenneth E. Carrel, custodian for Scott Carrel" with First Federal (FF). Originally the deposit with FF was in the form of a 24-month certificate, changed on July 24, 1973 to a 48-month certificate. Both certificates were registered: "Kenneth E. Carrel, Trustee for Scott Carrel." At the time of the issuance of the 48-month certificate, Carrel made a share loan of $15,000, secured by a pledge of the certificate. The note was signed by Carrel, without the "trustee" designation, but the check issued in disbursement of the loan was payable: "Kenneth E. Carrel, Trustee for Scott Carrel." The check was so endorsed by Carrel. The share loan was payable upon the maturity of the 48-month certificate. The loan had not been paid when this matter was tried.

### Farm & Home Savings Association Transactions

On May 31, 1974, Carrel opened a savings account with Farm & Home (F & H). He presented a cashier's check in the amount of $20,000 payable: "Kenneth E. Carrel, Custodian for Scott Carrel, a minor," and requested a savings account be opened in that name. The account was opened and a certificate of savings so registered was issued. On the same date, Carrel made a stock loan of $18,000 from F & H, executing a one-year note for that amount and pledging the certificate of savings as collateral security. The note was signed "Kenneth E. Carrel." The check issued in disbursement of the loan was payable: "Kenneth E. Carrel—Custodian for Scott Carrel—Minor" and so endorsed. A one-year renewal note, dated September 8, 1975, was followed by another, dated November 1, 1976. When that note was not paid, F & H, on November 9, 1977, applied $18,000 of the amount represented by the certificate of deposit to payment of the note.

### Removal of Guardian

The record evidence on this score is contained in an order of the DeKalb County Probate Court, as follows:

"Now on this 11th day of May, 1977, this cause coming on regularly for hearing, an order for hearing and notice of hearing having been made on May 4, 1977, upon the motion of this court; this court having been advised by the Honorable Franklin J. Thackery, attorney for Kenneth E. Carrel, guardian, of Scott Carrel, a minor, that there may have been a misappropriation, misuse or waste of funds being the property of the ward Scott Carrel and the court having heard the evidence and having been satisfied that there was a misappropriation, mismanagement and waste of funds of Scott

Carrel, a minor, by Kenneth E. Carrel, guardian.

"It is therefore, ordered, adjudged and decreed by this court, pursuant to the provisions of Section 475.110 and 473.140 Vernon's Annotated Missouri Statutes, that the said Kenneth E. Carrel is herewith removed as guardian of Scott Carrel, a minor, and his authority over the property, estate and person of Scott Carrel is herewith terminated.

"It is further ordered, adjudged and decreed that the Honorable Robert B. Paden, a member of the DeKalb County, Missouri Bar is continued in his appointment as guardian ad litem of the estate of Scott Carrel, a minor, and the said Robert B. Paden is hereby ordered and directed by this court to take whatever steps necessary to recover any and all funds of the said Scott Carrel, a minor, in the hands of Kenneth E. Carrel former guardian, and to make an accounting to this court of such funds received from the said Kenneth E. Carrel. The said guardian ad litem is further authorized and directed by this court to institute whatever action is necessary to recover from Kenneth E. Carrel and/or his surety Traveler's Indemnity Company, Hartford, Connecticut whatever assets Scott Carrel, a minor, had which are found to have been misappropriated, mismanaged or wasted by the said Kenneth E. Carrel, guardian.

"The following financial institutions who furnished certificates as to securities to the former guardian and to this court as set forth in this order on the respective dates and by the respective financial institutions and in the amounts set forth are hereby ordered by this court to account to the guardian ad litem, Robert B. Paden, in writing, under oath and executed by an appropriate officer of said organization an accounting from the date of their last certificate to May 11, 1977, of the whereabouts of said fund or funds and if any or all of said funds are still in the hands of said banking or financial institution or any certificates representing said funds said institutions are hereby directed and ordered to deliver to the guardian ad litem said fund or funds forthwith.

"The institutions and the amounts are as follows:

\*     \*     \*     \*     \*     \*

"Farm & Home Savings & Loan Association—from December 20, 1976—Certificate No. 935–000652 in the face amount of $20,350.49

\*     \*     \*     \*     \*     \*

"North American Savings & Loan Association—from December 17, 1976—savings passbook account No. 6104939 in the face amount of $13,568.81

"First Federal Savings & Loan Association—from December 20, 1976—Savings Certificate No. 50–50106.5 in the face amount of $16,000.00

"That the said guardian ad litem, Robert B. Paden, is further authorized and directed by this court to institute such actions as he deems necessary to recover from any depositories either described in this order or not described in this order in which the said Kenneth E. Carrel has deposited any funds belonging to the ward, any of such funds as may now be deposited in said depositories or to recover from any such depository any funds of which the depository had reasonable knowledge were fiduciary accounts of Kenneth E. Carrel for the benefit of Scott Carrel, a minor.

"That upon application of Margarete Carrel, the mother of Scott Carrel, a minor, she is hereby appointed by this court to be guardian of the person of Scott Carrel with all the duties pertaining thereto.

"That the said Robert B. Paden, guardian ad litem, is directed to report to this court as promptly as possible an accounting of all funds recovered for the benefit of Scott Carrel, a minor, and upon making such report is directed to post a corporate surety bond in the amount of said funds, said funds recovered to be placed in a restrictive account to be drawn by the said guardian ad litem only upon or-

der of this court for such purposes as this court may deem necessary and proper."

## Suit Filed

On June 28, 1977, Paden, as guardian ad litem of Scott Carrel, filed a two-count action in the DeKalb County Circuit Court. Count I was against Kenneth E. Carrel and Travelers Indemnity Company, alleging that Carrel as guardian had misappropriated some $80,000 of the funds of the estate of Scott Carrel, a minor. Count II was against six financial institutions, including the three above mentioned, alleging that they had permitted funds on deposit with them to the credit of Carrel as fiduciary for Scott Carrel to be converted by Carrel to his own use.

The case was tried on an amended petition. Count I was directed at Carrel and his surety. (The action against Carrel was dismissed for improper venue.) Count II sought recovery of $18,986.25 from North American alleging that NA knew that Carrel stood in a fiduciary capacity but that it permitted him to pledge the certificate of deposit as collateral for a loan although the probate court had not authorized Carrel to borrow from NA. Count III was against First Federal on a similar basis. Count IV stated a similar claim against Farm & Home.

Travelers filed a cross-claim against NA, FF and F & H, alleging that they misapplied the money on deposit with them, knowing that the amounts were guardian assets, claiming the right to be subrogated to plaintiff's rights against those defendants as a result of misapplication of guardianship assets.

Trial to the court resulted in a judgment in favor of plaintiff and against Travelers, subject to the terms and conditions of a loan receipt and agreement between plaintiff and Travelers, for $65,000. (The loan receipt and agreement are not a part of the transcript on appeal.) Judgment was rendered in favor of plaintiff and against F & H for $19,395, applied in payment of the loan and interest thereon, plus the amounts of interest previously earned on the Carrel account and used to pay the interest on the loan; for plaintiff against FF for $16,000; for plaintiff against NA for $18,986.25. Judgment was also entered in favor of Travelers against the defendants in the same amounts as the judgment in favor of plaintiff.

The judgment of the trial court was premised upon its finding, in the case of each of the savings and loan associations, that the deposits made by Carrel were funds of the guardianship estate; that the savings & loan was aware of the "fiduciary nature of the deposit" in each case from the date of the deposit and that the loans were made to Carrel in his individual capacity. Conclusions of law were to the effect that Carrel had no authority to bind the estate of his ward for the repayment of any loan; that the notes are not valid obligations of the estate; that the defendants had no valid legal right to apply the deposits in payment of the notes.

In this court each of the three appellants has filed a separate brief. Some of the grounds of error are asserted by all appellants. Others are not.

## Jurisdiction of Circuit Court

Appellant NA asserts that the subject of the litigation is a probate matter within the exclusive jurisdiction of the probate court so that the court below was without jurisdiction of the cause.

Section 473.210, RSMo 1978, provides:

"The succeeding administrator, or remaining executor or administrator, may proceed in any court having jurisdiction in civil actions against an executor or administrator and his sureties, or either of them or against any other person possessed of any part of the estate."

This provision applies in guardianship proceedings. § 475.100, RSMo 1978.

Section 473.210 confers jurisdiction of this cause upon the circuit court as an alternative to any remedy available in the probate court. *State ex rel. Langston v. Zorn*, 138 Mo.App. 713, 119 S.W. 517, 519 (1909); *Estate of Sample v. Travelers In-*

*demnity Company*, 534 S.W.2d 618, 620 (Mo. App.1976).

### Standing to Sue

The appellants NA and F & H contend that respondent Robert Paden was without standing to institute the action which resulted in the judgment appealed from.

Paden sued as guardian ad litem for the estate of Scott Carrel, a minor. The only evidence of his authority appeared in the order of the DeKalb County Probate Court of May 11, 1977, reciting that Paden "* * * is continued in his appointment as guardian ad litem of the estate of Scott Carrel, a minor * * *." That same order recited that Scott's mother had been appointed "guardian of the person" of her son.

Appellants point to Section 475.130 3. which provides in part:

"The guardian of the estate shall prosecute and defend all actions instituted in behalf of or against his ward; * * *."

Rule 52.02(a) provides, in part:

"Civil actions by minors may be commenced and prosecuted only by a duly appointed guardian of such minor, or, if there is no such guardian, by a next friend appointed for him in such civil action; * * *."

Sub-paragraph (b) of this rule requires the next friend to be appointed by the *judge or clerk of the court in which the* action is to be brought.

Section 475.010(2), RSMo 1978, defines a "guardian ad litem" as "* * * one appointed by a court, in which particular litigation is pending, to represent a minor * * in that particular litigation; * * *."

■ The respondents contend that any deficiency in the capacity of Paden to sue was waived because no objection on that ground was raised in the trial court. Acknowledging that such is the situation, appellants argue that the deficiency involved here was jurisdictional and may not be waived.

Cases do hold that a petition which does not show that plaintiff has a right to the action sued on fails to state a cause of action, a defect which may be taken advantage of at any stage of the proceeding. Rule 55.27(g)(2). See *Forck v. Prudential Insurance Company of America*, 228 Mo. App. 316, 66 S.W.2d 983, 984–985[2, 3] (1934). On the other hand, the rule is also well settled that " * * * where the incapacity of a trustee, assignee, executor, administrator, curator, guardian, or any public officer to sue appears upon the face of the petition, it became the duty of the defendant, if he wished to rely upon that point, to raise the same by a special demurrer, and, where such capacity in fact existed, but not appearing upon the face of the petition, then it became the duty of the defendant to raise the point by answering, and that the failure to so do in either case waived the question, and it could not be taken advantage of after verdict." *Crowl v. American Linseed Co.*, 255 Mo. 305, 164 S.W. 618, 625[1] (1914). See also *Wright v. Wayland*, 188 S.W. 928, 929–930[2] (Mo.App. 1916); *Darr v. Darr*, 287 S.W.2d 118, 120[1–4] (Mo.App.1956); Rule 55.27(g)(1).

The objection now raised by appellants is of the latter nature and may not be raised for the first time on appeal. Paden was not a volunteer or intermeddler. He was authorized by the court having jurisdiction over the estates of minors to proceed with the action which he brought. A misnomer of his position by that agency, never raised in the trial court, affords no basis for relief in this court. The real party in interest in the action was the minor ward and objection on the basis of capacity of the party suing in his behalf did not go to whether or not the petition stated a cause of action.

### Factual Findings

The appellants all question various findings of the trial court. All three question the court's finding that, as to each of them, the deposit made by Kenneth Carrel was from "estate funds."

In support of such findings, respondents rely upon certificates made by each of the appellants as to the funds held by them.

The annual settlements of Kenneth E. Carrel as guardian for the estate of Scott Carrel, a minor, filed in the DeKalb County Probate Court on May 31, 1974, January 26, 1976, and December 28, 1976, were introduced in evidence. Attached to each of the settlements were forms captioned: "Veterans Administration Certificate As To Securities." Each of the forms included the following: "I certify that the securities listed herein were exhibited to me by the above-named fiduciary as being the property of the estate of the ward, said securities then and there being in the custody and control of the fiduciary." Each of the certificates showed "Name of Fiduciary Kenneth E. Carrel" and "Name of Ward Scott Carrel." A certificate was executed by NA, dated May 14, 1974, for a $20,000 two-year certificate of deposit No. 06–1678–03, date of purchase 6/20/73; dated 7/30/75 for $20,000 certificate of deposit, purchased 6/20/73, Acct. No. 630–1678; dated 12/17/76 for savings passbook account No. 6104939 for $13,568.81, date of purchase 4/20/76. A certificate dated May 14, 1974, was executed by FF for a $16,000 certificate of deposit; one dated 7/31/75 for a $16,000 savings certificate, serial No. 50–50106.5, purchased 7/24/73; and a similar certificate dated December 20, 1976. F & H executed a certificate dated 8/11/75 for a $20,000 certificate of deposit, No. 935–000652, purchased 5/31/74; a certificate dated 12/20/76 for $20,350.49 certificate of deposit No. 935–000652, purchased 5/31/75. In each of the settlements the totals of the amounts so certified by appellants (and other financial institutions) corresponded with the balance shown on hand by the guardian.

This evidence was sufficient to support the trial court's finding that in each case the deposit was of "estate funds." The guardian accounted for them as such. Although the original source of the funds was not traced to the estate inventory, the guardian's treatment of them as estate funds authorizes the court's finding.

F & H argues that the trial court erred in finding that it was aware of the fiduciary nature of the deposit on May 31, 1974. There is no contention that at the time of the opening of any of the accounts involved, Carrel informed anyone that he was guardian for the estate of his son. However, in the case of F & H, the account was opened with a check payable to "Kenneth E. Carrel, Custodian for Scott Carrel, a minor," and the account was opened in that name. Thus, from the beginning F & H had notice that the funds involved were those of a minor and that the person handling the account, Kenneth E. Carrel, was acting on behalf of the minor. F & H points out that the term "custodian" is employed in the Uniform Gift to Minors Law (§ 404.010(6)), but that such position is a voluntary one, not subject to judicial authorization and control. However, the trial court did not find that F & H was aware that Kenneth was acting as guardian for Scott at the time the account was opened, merely that F & H knew from the outset of the "fiduciary" nature of the account. The fact that Kenneth was described as a custodian and that a minor was involved was disclosed to F & H and was sufficient to give it notice that it was dealing with a fiduciary.

NA also argues that there was no evidence that it had knowledge of the guardianship until after the Carrel account had been applied in payment of the loan which it secured. Again, however, the trial court's finding was that NA was aware of the fiduciary nature of the deposit from the time that it was made. As in the case of F & H the account designated Carrel as "custodian" for Scott and that fact was sufficient to permit the trial court to make the finding which it did.

F & H and FF complain that the trial court's finding that the loans involved were made to Kenneth Carrel "in his individual capacity" is not supported by evidence. In each case, the note executed by Carrel made no reference to any representative capacity. The proceeds of the loan were disbursed in the name in which the account was registered. Carrel's settlements as guardian did not account for the proceeds of either of the loans. Under such

evidence, the trial court could properly find that the loans were made to Kenneth Carrel in his individual capacity.

NA complains that there was no evidence that letters of guardianship had been issued to Kenneth E. Carrel. The letters of guardianship were not offered in evidence. However, the bond, placed in evidence, recited Carrel's appointment and the three annual settlements also recited Carrel's appointment on April 24, 1973. This objection is without merit.

■ NA also contends that there was no evidence that Carrel misappropriated funds of the guardianship estate or that the guardianship estate was injured by any act of NA. This argument is based upon the assumption that the probate court was required originally to find the fact and amount of loss to the guardianship. Section 473.210, which authorized this action in the circuit court, makes no requirement that the probate court first determine the fact and amount of defalcation. It does contemplate that, in removing the guardian, the fact of defalcation be found in the probate court. That was done in this case. There is no requirement that the amount owed by the defaulting guardian have also been there established.

■ NA argues further that it had no notice of the guardianship until after it had used the savings certificate to pay the share loan. However, knowledge of the exact nature of the fiduciary account is not the decisive factor in this case. As above noted, the trial court found in each case that the savings and loan accepted the deposit with knowledge of its "fiduciary" nature. NA does not question the finding that the loan which it made to Carrel was in his individual capacity. NA's position is premised upon the proposition that its liability must depend upon it having knowingly joined with a fiduciary in a breach of the fiduciary's trust.

However, the trial court's judgment is premised upon the theory that the savings and loan associations accepted a fiduciary deposit in payment of the fiduciary's individual obligation.

"Generally, there are three ways in which a bank may incur liability and be compelled to make good deposits that have been misappropriated by a fiduciary: (1) By a violation on its part of the contract, express or implied, between it and the owner of the fund; the reason for the bank's liability is based upon the general principle that a bank cannot discharge its obligation to a depositor except by payment in strict conformity to the contract of deposit; (2) By appropriating the fund, either with or without the fiduciary's consent, to the payment of the latter's debt to the bank; the reason for the bank's liability is based upon the general theory that the owner of a fund may follow it into the hands of, and recover it from, any person who has not innocently given value therefor; action for money had and received is an appropriate form of action in this class of cases; and (3) by assisting the fiduciary to accomplish the misappropriation, the bank having knowledge, actual or constructive, that the fraud is being or about to be perpetrated by the fiduciary; the reason for the bank's liability is that it knowingly makes itself a party to a fraud and must make good the loss that results from the misappropriation." 10 Am.Jur.2d Banks, § 521, pp. 492–493 (1963).

See *Lucas v. Central Missouri Trust Co.,* 350 Mo. 593, 166 S.W.2d 1053, 1058 (1942).

The second category is the basis relied upon by the trial court. Plaintiff's petition did allege and the court did find that the probate court had not authorized any loans by the guardian on behalf of the guardianship estate. Such finding negatived the possibility that the probate court had authorized the transactions involved, but liability of the depositories was not based upon a claim that they knowingly assisted the fiduciary in his misappropriation.

### Statutes

■ Ultimately all three appellants rely upon Section 369.184, RSMo 1978, as a defense to the claim asserted against them. That statute provides:

"1. An association may accept savings accounts in the name of any administrator, executor, custodian, guardian or other fiduciary for a named beneficiary or beneficiaries, and any such fiduciary may vote as a member of the association as if the membership were held absolutely, may open and make additions to, and may withdraw from any such account. Any payment to the fiduciary shall be a release and discharge of the association for the payment so made without regard to any notice the association may have received concerning the status or capacity of the fiduciary.

"2. If any fiduciary named in this section opens an account with an association in his own name not followed by the designation of his fiduciary capacity, the association shall treat such an account as the individually owned account of that person regardless of any notice to the contrary."

All contend that the share loans which they made constituted "payment" within the meaning of this statute. However, this contention flies in the face of the certificates, given after the loans had been made, that Carrel held certificates for their face amount. Obviously, if there had been payment (other than of interest) of the certificate or a portion thereof, the deposit represented by the certificate would have been reduced by the amount of the payment, but the certificates represented that the face amount of the certificates remained undisturbed. See *Western Casualty & Surety Co. v. First State Bank*, 390 S.W.2d 913, 919[10, 11] (Mo.App.1965).

■ Appellants also rely upon Section 369.154 2., RSMo 1978:

"2. Savings accounts may be opened and owned by any one or more persons, partnerships, associations, corporations, political subdivisions, or public or governmental units; shall be represented on the books of an association by a separate account in the name of the owner thereof; and shall be transferable only in the manner authorized by the association's board of directors. An association shall be under no duty to determine the ownership of the funds received by it for any savings account and shall treat the account holder of record as shown by the savings account contract as the owner for all purposes. An association shall not be liable to any person claiming any interest in a savings account unless the interest of such person appears in the savings account contract or has been established by a decree or order of court determining the ownership and a copy of such decree or order has been furnished the association. These provisions shall apply even though the name of the person appearing on the savings account contract as owner is modified by a qualifying or descriptive term such as 'agent', 'trustee', or other word or phrase indicating that such person may not be the owner in his own right. The association shall have a lien on a savings account for all amounts owed it by the owner thereof. The owner of a savings account may pledge the account to secure his own obligation or that of another and, if written notice of such pledge is served upon the association, the pledgee shall be protected."

Here the savings accounts did disclose the interest of Scott Carrel. There was not a bare designation of Kenneth Carrel as "trustee" or "custodian." The name of the party beneficially interested appeared in the savings contract. Section 369.154 is of no assistance in these circumstances.

### Other Contentions

■ Respondent NA complains of numerous omissions in plaintiff's amended petition upon which the cause was tried and that by reason of such omissions, the petition failed to state a claim for relief against it. Evidence pertaining to the matters complained of was presented without objection at the trial and the petition is deemed amended in such respects. *Greene v. Morse*, 375 S.W.2d 411, 418[11] (Mo.App. 1964).

### Travelers' Judgment

■ Appellants complain of the judgment against them in favor of Travel-

ers on the latter's cross-claim. NA repeats its jurisdictional complaints which have been previously considered and found without merit. It contends that Travelers cannot assert a right of subrogation without showing payment by it to the guardianship estate. The judgment in favor of the guardian ad litem against Travelers established the liability of the latter and was sufficient to permit the judgment over in favor of Travelers. *Lewis v. Amchem Products, Inc.,* 510 S.W.2d 46, 49[5–7] (Mo. App.1974). NA also complains that the total claim of the guardian amounted to some $82,000 and that the guardian settled with Travelers for $64,717.43. NA invokes the rule that actions based upon subrogation may not be maintained until the whole debt involved has been paid. See *Guilford Bank of Guilford v. Hubbell,* 138 S.W.2d 690, 692[3] (Mo.App.1940). That rule exists for the benefit of the creditor and has no application when, in a case such as this, the creditor is not prejudiced by allowing subrogation on the basis of a partial payment. *U.S.F. & G. Co. v. Maryland Cas. Co.,* 186 Kan. 637, 352 P.2d 70, 76–77[13–19].

F & H asserts that Travelers has no right of subrogation against it because it was guilty of no wrongdoing. Application of the fiduciary account to the payment of the individual debt of the fiduciary was the wrongful act which supported the claim against it. *Western Casualty & Surety Co. v. First State Bank,* 390 S.W.2d 913, 920–921[13–15] (Mo.App.1965). F & H's complaint that neither the cross-claim nor the evidence was sufficient to support the judgment against it repeats the complaint against the judgment in favor of the guardian and is without merit.

FF complains that the terms and conditions of the loan agreement between Paden and Travelers were not placed in evidence and therefore the judgment against it is not supported by substantial evidence. The judgment in favor of Paden against Travelers established the latter's liability. *Lewis.* FF complains that there was no evidence that it acted with knowledge of breach of guardianship duty by

Carrel. Again, FF's deposit was in the name of Carrel as trustee for Scott Carrel and the fiduciary nature of the deposit was apparent. The wrong on its part was the acceptance of such deposit as security for a personal loan. Acceptance of the deposit and establishing an account as "trustee" is not the basis for the claim against FF. The objection that neither the plaintiff's petition nor Travelers' cross-claim stated a claim against FF is without merit. This contention is premised upon contentions of FF which have previously been rejected.

Judgment affirmed.

All concur.