METRO TRUST COMPANY, GUARDIAN OF Estate of Rita Marie HUBER and Nancy Jean Huber, Plaintiffs-Appellants,

v.

NORTHWESTERN SAVINGS & LOAN ASSOCIATION, Defendant-Respondent.

No. 44900.

Missouri Court of Appeals, Eastern District, Division Two.

May 3, 1983.

Rehearing Denied July 12, 1983.

Application to Transfer Denied Aug. 16, 1983.

Theodore D. Ponfil and Mark Sadow, Clayton, for plaintiffs-appellants.

Robert Inman, Clayton, for defendant-respondent.

KAROHL, Judge.

Plaintiffs Metro Trust Company, as guardian for Rita Marie Huber, and Nancy Jean Huber, for herself, jointly petitioned the trial court for equitable relief requesting (1) an accounting of custodial accounts opened and deposited with defendant Northwestern Savings & Loan, under the Missouri Uniform Gift To Minors Law, Chapter 404 RSMo 1978,[1] (2) cancellation of liens on these accounts and (3) restitution of the balances in the accounts. The parties agreed at trial that an accounting had been furnished and that issue was withdrawn from the case. The trial court rendered a judgment in favor of defendant solely upon a finding that plaintiffs had sustained no loss and were therefore not entitled to any equitable relief.

Plaintiffs based their appeal upon two points: (1) that the court erred in failing to find and assess proven damages; and (2) that the court erred in granting defendant the benefit of the doctrine of equitable tracing of funds. Plaintiffs argue that because the defendant made unauthorized loans to the fiduciary in her individual capacity and accepted a pledge of the custodial accounts as security for the loans, defendant was not entitled to equitable relief. Defendant filed a counterclaim against plaintiff Metro Trust Company and plaintiff Nancy Jean Huber praying judgment for any sums awarded to the plaintiffs. In finding for defendant on plaintiffs' petition, the trial court denied defendant's alternative counterclaim and defendant filed a

cross-appeal. A motion to consolidate appeals was granted and we consider the cross-appeals as one case. *Punch v. Hipolite Co.,* 340 Mo. 53, 100 S.W.2d 878, 880 (1936).

D. Alviena Huber, a widow and the mother of Rita Marie Huber and Nancy Jean Huber, established savings accounts with defendant Northwestern Savings & Loan Association. Mrs. Huber opened the first account on August 15, 1973, with a $49,500 deposit in the name "Mrs. D. Alviena Huber Custodian for Rita Marie Huber under the Uniform Gifts To Minor's Act." On August 5, 1975, Mrs. Huber opened a second account, depositing $6,800 with defendant also in her name as custodian for Nancy Jean Huber under the same statute.

On August 29, 1973, Mrs. Huber borrowed $27,088.62 from defendant, giving as security the account which she held as custodian for her daughter, Rita. Thereafter she borrowed an additional $17,000 and pledged the same account. Both loans were to Mrs. Huber in her individual capacity and she applied the funds to her own use. Subsequently, she withdrew $18,404.44 from the account and repaid the $17,000 loan with interest.

On the day Mrs. Huber opened the second account, she borrowed $6,120 from defendant in her individual capacity, and pledged as security the second account which she held as custodian for Nancy.

Mrs. Huber died intestate on April 20, 1976, leaving as her sole heirs her daughters, Rita Marie Huber and Nancy Jean Huber. Plaintiff Metro Trust Company served as guardian of the girls' estate and as administrator of Mrs. Huber's estate. In its capacity as guardian Metro Trust made no claim against Mrs. Huber's probate estate for the return of funds wrongfully withdrawn or payment of balances due on the loans secured by the accounts. Nor did it make a demand upon defendant to take charge of the custodial account balances, free from any security liens, during the probate claim period applicable to the es-

---

1. Originally Chapter 404 RSMo 1969. All statutory references are to RSMo 1978 unless otherwise stated.

tate. § 473.360 RSMo 1969 (amended). Had Metro Trust done so, defendant would have been alerted to make a cross-claim against the probate estate. Even without a demand by plaintiff Metro as guardian, defendant could have made a claim on the loan balances, failed to do so, and is now barred by the non-claim statute applicable at the time, § 473.360 RSMo 1969.

At the time of trial Rita's account balance was $42,816.23. Because of the pledge of the account to secure the $27,088.62 loan, defendant claimed the balance was subject to a lien of that amount, as principal, plus $13,605.90 interest, for a total of $40,694.52. Defendant also claimed that the balance in Nancy's account, $8,742.60 was subject to a lien in the amount of $6,120.00 plus $3,110.12 interest, for a total of $9,230.12.

The evidence was undisputed that Mrs. Huber used the $27,088.62 loan to buy real estate which remained in her name at the time of her death. Mrs. Huber deposited the $17,000 loan proceeds in a checking account in her name which had a balance of $28,154.72 at the time of her death. The proceeds of the $6,120.00 loan may also have been deposited to this checking account.

The intestate estate of Mrs. Huber distributed $690,000 to the guardianship estates of her two daughters. In addition, $350,000 was distributed to these guardianship estates from an ancillary estate of Mrs. Huber probated in Florida.

The trial court found that *if* Mrs. Huber borrowed funds from the custodial accounts in her individual capacity and thereby breached her fiduciary duty, then the equivalent assets became a part of her estate which her daughters received by probate, and that they therefore sustained no loss and were not entitled to equitable relief. The court held that the daughters would have been unjustly enriched by the application of equitable remedies under these circumstances. It made no express finding as to whether defendant would have otherwise been liable for a breach of its fiduciary duty in its capacity as a depository. Uniform Fiduciaries Law, §§ 456.240–.350.

The trial court found, however, that the collateral pledge cards and withdrawal cards were signed "Mrs. D. Alviena Huber" and loan proceeds checks to Mrs. Huber were made payable to "Mrs. D. Alviena Huber." The words "as custodian" were not printed or typed after her signature as they were on signature cards used to open the accounts.

■ A gift made under the Uniform Gift To Minor's Law is "irrevocable and conveys to the minor indefeasibly vested legal title to the . . . money given . . . ." § 404.030.1. As a result of the gift naming herself as custodian, Mrs. Huber became a fiduciary with regard to the accounts. § 404.040.9. From the record, it is clear that Mrs. Huber borrowed from defendant, signed the collateral pledge cards, and withdrew money from Rita's account to pay off one of the loans, solely in her individual capacity, and not as custodian. In so doing, she breached her fiduciary duty as custodian. *See Western Casualty & Surety Co. v. First State Bank of Bonne Terre,* 390 S.W.2d 913, 919 (Mo.App.1965).

■ Under several sections of the Uniform Fiduciaries Law, a person who deals with the fiduciary will be held liable to the principal if he has actual knowledge that "the fiduciary is committing a breach of his obligation as fiduciary." §§ 456.260, 456.270, 456.280, 456.290, 456.300, and 456.310; *Trenton Trust Co. v. Western Surety Co.,* 599 S.W.2d 481, 491 (Mo. banc 1980). The savings account records disclosed that Mrs. Huber was a custodian, and therefore defendant knew from the outset the fiduciary nature of the accounts. *State ex rel. Paden v. Carrel,* 597 S.W.2d 167, 174 (Mo.App. 1979). When defendant authorized collateral pledge of the accounts and the withdrawal to pay off the loan, it had actual knowledge of Mrs. Huber's breach of her fiduciary duty. *Trenton Trust Co. v. Western Surety Co.,* 599 S.W.2d at 493, 497. A showing that defendant had knowledge that the fiduciary was committing a breach of her fiduciary obligations is sufficient to also prove bad faith on the part of defendant. *Id.* at 492. This is especially true where defendant received a profit on the prohibited loan transactions. *Cassel v. Mercantile Trust Co.,* 393 S.W.2d 433, 440–441

(Mo.1965). Since defendant had actual knowledge that the fiduciary was committing a breach of her obligation, defendant can be held liable to the principal. *State ex rel. Paden v. Carrel,* 597 S.W.2d 167 (Mo. App.1979); *Western Casualty & Surety Co. v. First State Bank of Bonne Terre,* 390 S.W.2d 913 (Mo.App.1965).

■ However, the beneficiaries are entitled to judgment only to the extent of any loss sustained as a result of the breach of duty. *See Walsh v. Walsh,* 285 Mo. 181, 226 S.W. 236, 247 (1920). Plaintiffs must credit defendant with what they have already recovered in order to have equitable relief. *City Investing Co. v. Davis,* 334 S.W.2d 63, 69 (Mo.1960).

■ If there had been no breach of duty, Rita would have received her custodial account intact which would have been $49,-500 plus accrued interest, and Nancy would have received $6,800 plus accrued interest less any interest that may have been paid to the custodian, as custodian. These sums would not have been in the mother's probate estate and not subject to probate expenses, estate and inheritance taxes.

Accordingly, to the extent that Rita received less than she would have had there been no breach of fiduciary duty, she sustained a loss and is entitled to be compensated. In order to determine the measure of loss, the trial court should first compute the gross value of the gift by considering the $49,500 deposit, adding interest at the agreed rate, and subtracting interest paid to the custodian, as custodian, if any. This total would represent the gross value of the gift if it had been untouched by unauthorized withdrawals or unencumbered by the unauthorized pledge, and received without probate expenses. To determine whether Rita received an amount equal to the gross value, the court should compare the gross value with: (1) the realized estate value of the real estate purchased with the $28,000 loan adjusted by imputed or actual interest to present value, plus (2) the present value of the $17,000 loan proceeds, plus (3) the present value of the $6,120 loan proceeds, less (4) total probate expenses including fees, costs and taxes related to these sums, divided in half. This will represent the

amount Rita actually received after probate of her mother's estate, adjusted to the date of re-hearing. The difference between the amount Rita received from the probate estate adjusted to date, and, the gross value of her gift is the measure of her loss.

Nancy Jean Huber's claim presents a different problem because she appears to have received more by inheritance than she would have received by the undisturbed custodial account. As a beneficiary to one-half of her mother's estate she received one-half of the value of the real estate and the $17,000 which was diverted from Rita's account and one-half of the $6,120 from her own account. To the extent she received by inheritance a part of the proceeds traceable from Rita's account to the mother's estate and in turn to her, she is liable to defendant Northwestern Savings & Loan Association on its counterclaim. Only in this way can the court do full and complete justice within the scope of the pleadings and between all parties. *Willman v. Beheler,* 499 S.W.2d 770, 778 (Mo.1973).

■ Defendant argues, however, that the minors' cause of action is derivative of Mrs. Huber and that in breaching her fiduciary duty to the minors Mrs. Huber was a wrongdoer and therefore the minors cannot recover. Defendant argues that the minors cannot make the turpitude of their ancestor the foundation of a cause of action. *LaRue v. LaRue,* 317 Mo. 207, 214, 294 S.W. 723, 726 (1927). Defendant's argument fails, however, because the plaintiffs' cause of action is founded upon legal title indefeasibly vested by the gift under § 404.030.1. The claim would exist against their mother, if living, and the defendant. Their cause of action against the defendant is not derivative but direct. Whether Mrs. Huber, had she lived, would have been entitled as custodian to demand payment of the account balances on behalf of the minors is immaterial and constitutes no defense.

■ Nor can the defendant claim relief for the failure of Metro Trust Company, as guardian, to claim a return of the account deposits during the probate non-claim period while it was also serving as administrator of Mrs. Huber's estate. As guardian, Metro had a duty to take charge of the assets of the minors but there is no provi-

sion in the law that it must do so within a set time. Further, defendant was free to have made a claim against the Huber estate for the balance due on the borrowed sums owed by Mrs. Huber at the time of her death. It failed to make such claims and its failure does not constitute a defense to Rita's claim.

We remand with instruction that the trial court hear such additional evidence as may be necessary to (1) determine the loss sustained by Rita Marie Huber and award judgment against defendant in that amount; and (2) to make a determination of the sum received by plaintiff Nancy Jean Huber from the estate of her mother and traceable to the diverted funds from both custodial accounts less the amount she would have received directly in her custodial account if unaffected by defendant's breach of fiduciary duty and award that amount to defendant on its counterclaim against plaintiff Nancy Jean Huber. The trial court should make appropriate disposition of the custodial accounts consistent with its findings and judgment.

SNYDER, P.J., and DOWD, J., concur.

### ON MOTION FOR REHEARING

Respondent's motion for rehearing presents two issues: First, that the gift to minors' accounts would be part of Mrs. Huber's gross estate for federal estate tax purposes; and, second, that the opinion does not clearly and adequately describe the values the trial court on remand must consider in determining what the daughters received from the estate.

If the accounts are includable in the gross estate for federal estate tax purposes [1] then the gross value of the gift would be the total amount of the deposit to the gift to minors' account plus accrued interest according to the terms of the deposit less any interest paid and any applicable taxes.

1. *See Stuit v. Commissioner,* 452 F.2d 190 (7th Cir.1971); *Eichstedt v. United States,* 354 F.Supp. 484 (N.D.Cal.1972); *Estate of Jacoby v. Commissioner,* 29 TCM 737 (1970); Annot., 50 A.L.R.3d 528, 536 (1973). Although the gift is of indefeasible legal title, under certain circumstances, it may be includable in the donor's

From this sum the court should subtract the values each daughter received through the probate proceeding with respect to the real estate purchased by the unlawful borrowing and the $17,000 and $6,100 loans or withdrawal. Any interest earned by the estate and the daughters on these sums should also be credited against the gross value of the gifts. The court should then allow Rita the difference between the gross value of her gift and the sum she actually received from these three assets of the estate as the measure of her loss by reason of the breach of duty. To determine the amount Nancy received in excess of what she should have, the same calculations would apply in reverse.

Appellants' and respondent's motions for rehearing are overruled.

SNYDER, P.J., and DOWD, J., concur.

gross estate either as a gift in contemplation of death made within three years of death or where the donor is a parent and the gift remains available to meet the donor's duty of support. *See Exchange Bank & Trust Co. v. United States,* 694 F.2d 1261, 1263–64 (Fed.Cir. 1982).